[Argued March 25; decided April 12, 1897.]

## CORBETT *v.* CITY OF PORTLAND.

(48 Pac. 428.)

31 407|
42 490|

TAXES BY MUNICIPAL CORPORATIONS.— Power to levy a special tax for any purpose cannot be implied from a provision of a municipal charter fixing upon the rate of taxation a limit in excess of the rate conferred by previous provisions for general municipal purposes.

LIMIT OF TAXATION UNDER PORTLAND CHARTER OF 1893.— Under sections 36 and 204 of the Portland charter of 1893 the municipality cannot levy a tax of more than 8 mills on the dollar, for section 204 is a limitation and not a grant of power.

RIGHT OF MUNICIPAL TAXATION.— The right of taxation is essentially a sovereign attribute to be exercised by municipalities only in the manner and to the extent conferred upon them by their charters, and taxation by such bodies must always be supported by an express or necessarily implied grant of power.

POWER TO COMPEL MUNICIPAL TAXATION.— The courts cannot compel the levy of a tax by a municipal corporation in excess of the limit of taxation imposed in the grant of the taxing power even at the suit of a creditor whose debt will otherwise remain unpaid, unless the limitation is such an abridgment of the right of taxation existing at the time the debt was incurred as in effect to impair the obligation of the contract.

IMPLIED POWER OF TAXATION.— Authority conferred upon a municipal corporation to contract debts or incur other obligations will not alone imply a power to levy taxes to pay such debts or obligations in excess of the limit otherwise imposed on the corporation's power to tax.

From Multnomah: LOYAL B. STEARNS, Judge.

Suit by Henry W. Corbett and others to enjoin the City of Portland and its officers from collecting a certain tax. In the year 1895 the city levied a tax of 8 mills on the dollar on all its taxable property for general and fire and police expenses, and then levied an additional tax of 2 mills ostensibly to be used for paying interest charges. The plaintiff contends that

this 2-mill levy is void because the city had exhausted its taxing power.   Section 36 of the charter gives the council power to assess and collect taxes for general municipal purposes not exceeding 8 mills on the dollar; and section 204 provides that during any fiscal year the rates of general and specific taxes levied must not exceed in the aggregate 1½ per centum.   The 8-mill levy exhausted the taxing power under section 36, and the question is whether the language of section 204 is a grant of power to levy further taxes, or a limitation on the general power to tax.   There was a decree for defendants on a demurrer to the complaint, and plaintiffs appeal.

REVERSED.

For appellants there was a brief and an oral argument by *Messrs. William P. Lord, Joseph Simon,* and *William T. Muir,* to this effect:

Municipal corporations have no inherent powers of taxation: *Webster* v. *Harwinton,* 32 Conn. 131; 2 Dillon on Municipal Corporations (4th ed.), §§ 763–765; *Caldwell* v. *Rupert,* 10 Bush (Ky.), 179; *Drake et al.* v. *Philips et al.* 40 Ill. 388–9; *State ex rel. Shackelton* v. *Guttenberg,* 39 N. J. Law, 660; Cooley on Taxation (2d ed.), p. 678–679; *State Railroad Tax Cases,* 92 U. S. 615; *In re Methodist Episcopal Church,* 66 N. Y. 395; *Vance* v. *Little Rock,* 30 Ark. 435; *Savannah* v. *Hartbridge,* 8 Ga. 23; *Webster* v. *People,* 98 Ill. 343.

The power to tax is legislative: Cooley on Taxation ( 2d ed.), pp. 41–56, and strictly construed; *Caldwell* v. *Rupert,* 10 Bush (Ky.), 179–182; *Drake* v. *Philips,* 40

Ill. 388; *Savannah* v. *Hartbridge,* 8 Ga. 23–26; *Webster* v. *People,* 98 Ill. 343.

Money collected through taxation for one purpose cannot be used for another, nor can failure to exercise authority given, confer authority not given: *Union Pacific Railroad* v. *Dawson,* 12 Neb. 254–257; *Webster* v. *People,* 98 Ill. 343–349.

The intention of the constitution in directing the legislature to limit the rate of taxation which may be imposed by a municipality, and the purpose of the legislature in so limiting it, was to secure economy in the administration of municipal affairs. This intention should be conserved, and the defendant city limited for all purposes, except when otherwise expressly permitted, to the rate of 8 mills: *U. P. R. R.* v. *Dawson,* 12 Neb. 254–5–7; *City of New Orleans* v. *United States,* 49 Fed. Rep. 40–43; *Shackelton* v. *Guttenberg,* 39 N. J. Law, 660–663; *State ex rel.* v. *Strader,* 25 Ohio St. 527–534, *et seq.; Webster* v. *People,* 98 Ill. 243–349; *McPherson* v. *Foster Brothers,* 43 Iowa, 48–73; *People* v. *May,* 9 Colo. 80–91–95.

For respondents there was a brief and an oral argument ·by *Messrs. William M. Cake,* city attorney, and *Richard Williams,* to this effect:

The moral as well as legal obligation rests on every public ·corporation to pay its just indebtedness, and taxation is the usual and generally the only recourse for that purpose. In that respect this case is not exceptional. While it is not claimed that there is any inherent power in a municipal corporation to levy and collect taxes, it is claimed that when such a cor-

poration has, pursuant to express authority, created indebtedness, or has indebtedness placed upon it by legislative act, as in the acts of consolidation, the power if not expressly given may be implied to pay such indebtedness by taxation: *Butz* v. *Muscatine,* 75 U. S. (8 Wall.), 581; *Loan Association* v. *Topeka,* 87 U. S. (20 Wall.), 660; *Hasbrouck* v. *Milwaukee,* 25 Wis. 112; *United States* v. *New Orleans,* 98 U. S. 393; *Avery* v. *Job,* 25 Or. 520; 2 Dillon on Municipal Corporations, § 741; Cooley on Taxation, 76–138.

The Portland charter of 1893, section 36, subdivision 38, empowers the council to appropriate money to pay the debts, liabilities, and expenditures of the city, or any department thereof, or any part or item thereof. It is admitted that the bonded indebtedness of the city to the amount of $1,231,500 is lawful, and no question is made concerning the duty to pay it with interest. If the duty is once imposed upon the city to pay this indebtedness, no subsequent act of the legislature could impose a limit which would curtail the power or affect the duty to do so: 1 Dillon on Municipal Corporations (2d ed.), § 41; Cooley on Taxation, p. 76, note 3; 2 Beach on Public Corporations, §§ 1410–1418; *Van Hoffman* v. *City of Quincy,* 4 Wall. 535, 554, 555; *People* v. *Bond,* 10 Cal. 570; *Wolf* v. *New Orleans,* 103 U. S. 358–365; *Fisk* v. *Jefferson Police Jury,* 116 U. S. 131.

This court is asked to curtail the current necessary expenses of the city, and to direct the council to appropriate less money therefor, and to so manage the affairs of the city that enough shall remain from the amount realized by it from the levy of 8 mills to pay

the interest on the bonded indebtedness. It is the well established rule that legislative power cannot in these respects be controlled by the court: Cooley on Taxation (2d ed.), 740; 2 Beach on Public Corporations, 817, § 797; *Dibble* v. *Tonnshal,* 56 Conn. 199; *Methodist Church* v. *Baltimore,* 31 Md. 299; *East St. Louis* v. *Zebley,* 110 U. S. Rep. 324; *Blanding* v. *Burr,* 13 Cal. 351–2.

Opinion by MR. JUSTICE BEAN.

This is a suit by H. W. Corbett and others to restrain the collection of a special tax levied by the City of Portland for the payment of interest charges on its bonded and other indebtedness. It is alleged in the complaint that on June 30, 1895, the common council of the city, by ordinance No. 9103, levied a tax of 8 mills on the dollar for general municipal purposes, and, on the same day, by ordinance No. 9104, an additional tax of 2 mills for the payment of the annual interest charges on the bonded and other indebtedness of the city; that there is no warrant or authority of law for the passage of the latter ordinance, or for the attempted levy of such additional tax, and that all proceedings in reference thereto are void and of no effect. The complaint further alleges that in and by the act of incorporation of the defendant city it is provided that the levy of taxes for general municipal purposes shall not exceed in any one year 8 mills on the dollar, and out of the sum realized therefrom, and the other revenues of the city, it must pay the interest charges and all other general municipal expenses. It is also alleged that prior to the

commencement of this suit the plaintiffs paid, or tendered and offered to pay, the full amount of the 8-mill tax assessed against them by ordinance No. 9103, and that the defendant Sears, as sheriff of Multnomah County, threatens to and will, unless restrained, attempt by levy and sale to collect the remaining 2 mills, and therefore an order is prayed for enjoining and restraining the collection of such additional tax. The defendants filed an answer in which they admit the levy of the general and special tax as alleged, but deny that the latter was without authority of law, and, further answering, allege that it will be impossible to successfully conduct the affairs of the city, and meet the current lawful expenses and interest on the public debt, without the additional revenue which the special 2-mill tax is expected to yield, and that in the opinion of the mayor and common council both levies were indispensable to meet the public exigencies. A reply having been filed, the cause was tried, and a decree rendered dismissing the complaint, from which the plaintiffs appeal.

It appears that in July, 1891, the then cities of Portland, East Portland, and Albina were consolidated into one municipality, under the name of the "City of Portland," by an act of the legislature, filed in the office of the secretary of state, February 19, 1891: (Laws 1891, p. 796.) By the terms of this act the title to all the public property belonging to the municipalities referred to became the property of the consolidated city, and it was made liable for their indebtedness, amounting at the time, in the aggregate, to the sum of $681,000. This amount has since been

increased by legislative authority until at the time
this suit was commenced the entire bonded indebted-
ness, the interest of which is payable from the general
revenues of the city, amounted to $1,181,500, and the
interest thereon to $73,907.65.   By the charter of the
consolidated city, which imposed thereon the debts of
its predecessors, and under which the additional
bonded indebtedness was incurred, the common coun-
cil was authorized and empowered to assess, levy, and
collect a tax on all the taxable property in the city of
3 mills on the dollar for general municipal purposes,
a special tax of 3½ mills for the fire department, and
a like tax for the police department, making a total of
10 mills on the dollar.   In 1893 the charter of 1891
was repealed, and a new one enacted, which was in
force at the time the tax in question was levied, and
by which its validity must be determined.   The por-
tions of the latter charter, material to this contro-
versy, are as follows:—

"Section 36.   The council has power and authority
within the City of Portland:   1. To assess, levy, and
collect taxes for general municipal purposes, not to
exceed 8 mills on the dollar, upon all property, both
real and personal, which is taxable by law for state or
county purposes": Laws 1893, p. 819.

"Section 176.   The board of fire commissioners
shall on the first day of January of each year, or as
soon thereafter as practicable, report to the common
council the estimated amount of salaries and other
necessary expenses of the fire department for the en-
suing year, together with the estimated cost of con-
structing and erecting cisterns and hydrants, and the

erection and the repair of buildings, the purchase of lots for the purpose of erecting engine houses thereon, the purchase of engines, hose carts, hose, horses, feed, material and apparatus for said department required for the ensuing year; and the common council shall, if they deem the same practicable, at the same time that other taxes are levied and collected, levy and collect a special tax sufficient to raise the amount so estimated by the board of fire commissioners, which tax shall be paid into a fund to be known as the fire department fund of said City of Portland, and shall be subject solely to the control of the said board of fire commissioners, and shall be paid out by the city treasurer upon warrants drawn by the mayor and auditor of the said city upon requisitions therefor made by the president of the board of fire commissioners, for claims duly allowed by said board; and the mayor and auditor are hereby directed to draw warrants on said fire department fund in accordance with the requisition of said president of the board of fire commissioners, such requisitions to remain on file in the office of the auditor, and to be sufficient authority for drawing warrants as aforesaid ": Laws 1893, p. 861.

"Section 204. The fiscal year of the city shall commence on the first day of January and end on the last day of December of each year, and during any such year the rates of general and specific taxes levied must not exceed, in the aggregate, 1½ per centum": Laws 1893, p. 867.

The principle is universal that whenever a municipality or other governmental agency of a state seeks to impose the burden of taxation upon a citizen or

upon his property it must be able to show the grant
of such power by express words or necessary implica-
tion. No doubtful inference from other powers granted
or from obscure provisions of the law, nor mere mat-
ter of convenience, or even necessity, will answer the
purpose. The grant relied upon must be evident and
unmistakable, and all doubts will be resolved against
its exercise, and in favor of the taxpayer. "Every
municipal corporation, and every political division of
the state, which demands taxes from the people," says
JUDGE COOLEY, "must be able to show due authority
from the state to make the demand": Cooley on Tax-
ation, 474. Or, as JUDGE DILLON puts the same doc-
trine, "It is a principle universally declared and ad-
mitted that municipal corporations can levy no taxes,
general or special, upon the inhabitants or their prop-
erty, unless the power be plainly and unmistakably
conferred. It has, indeed, often been said that it must
be specifically granted in terms; but all courts agree
that the authority must be given either in express
words or by necessary or unmistakable implication,
and that it cannot be collected by doubtful inferences
from other powers, or powers relating to other sub-
jects, nor can it be deduced from any consideration of
convenience or advantage": 2 Dillon on Municipal
Corporations (4th ed.), § 763. It is by the applica-
tion of these fundamental principles to the granted
powers of the defendant city that the case in hand
must be determined, and, in our opinion, it presents
no serious difficulty. It is admitted that there is no
express power to levy taxes conferred by the charter,
other than that granted by sections 36 and 176, and

it is not claimed that the tax in question was levied under the provisions of either of these sections. The contention for the city is that section 204 confers by implication the power to levy taxes for special purposes, in addition to the 8 mills authorized by section 36, to the extent, in the aggregate, of 15 mills. We are unable to concur in this construction of the section. It is argued that the legislature, having limited the rate of taxation for general purposes to 8 mills, and subsequently provided in section 204 that the rate of general and special taxes must not exceed in the aggregate 1½ per cent. in any fiscal year, it intended to and did thereby authorize, by implication, the levy of special taxes to the amount of 7 mills. In short, it is sought to imply the power of taxation from mere words of limitation; but manifestly the grant of a power by the exercise of which a citizen may be deprived of his property in invitum cannot be safely thus inferred. The section in question is found among the miscellaneous provisions of the charter, and was evidently copied from that of 1864 into each succeeding charter, without noticing that it did not conform to the actual limit on the power of taxation elsewhere provided in the respective charters. It was not originally intended as a grant of power, and obviously cannot be so construed. It does not declare that a special tax may or shall be levied; all that is said on the subject is that the aggregate rate of taxation in any one year shall not exceed a certain limit. It would be indeed strange if the legislature, intending to confer the important right to levy taxes in excess of the power already granted, should have left such intention to be

ascertained by doubtful inference from a mere limitation on the power of taxation in a section of the charter relating to the beginning and ending of the fiscal year, and that, too, without any declaration or provision anywhere in the charter as to the purpose for which this special tax might be levied. The power to tax, and the purposes for which the money derived therefrom should be used, are to be found elsewhere in the charter, and if it was intended to authorize the levy of an additional special tax to pay interest on the bonded indebtedness it is hard to see why it was not done when the subject of taxation was before the legislature. It appears quite clear that section 204 cannot be so construed as to confer the power to levy a special tax for any purpose, but that all the power of taxation possessed by the defendant city under its charter must be found in sections 36 and 176 above quoted.

But it is strenuously insisted that under this construction of the charter the city will be unable to meet its current expenses and pay the interest on its outstanding indebtedness. If true, this argument might be a very persuasive one if addressed to the lawmaking power; but it can have no weight with the judiciary, whose duty it is to interpret and not make laws. The power of taxation is a sovereign right which belongs exclusively to the legislative branch of the government, and can only be exercised by subordinate governmental divisions in pursuance of laws passed by the legislature for that purpose. They are but instrumentalities of the state, brought into exist ence for public purposes, and have no authority be-

*31 Or.—27.*

yond that conferred by the law creating them. They
have no inherent power of taxation. Their right to
impose burdens upon persons or property is wholly
statutory, and can be exercised only to the extent
granted. And when the limit prescribed in the grant
of the taxing power is reached the power is exhausted,
and the courts cannot even compel the levy of a tax
in excess of that limit at the suit of a creditor whose
debt would otherwise remain unpaid, unless the limi-
tation is such an abridgment of the right of taxation
as it existed at the time the debt was incurred as in
effect to impair the obligations of the contract: 15 Am.
& Eng. Enc. Law (1st ed.), 1140; *United States* v. *Mayor
of Burlington*, 2 Am. L. Reg. (N. S.) 394, and Judge
DILLON's valuable note thereto; *Portland Savings Bank*
v. *Montesano*, 14 Wash. 570 (45 Pac. 158); *Vance* v.
*City of Little Rock*, 30 Ark. 435; *Supervisors* v. *United
States*, 85 U. S. (18 Wall.), 71; *Clark* v. *City of Daven-
port*, 14 Iowa, 497; *State ex rel.* v. *Shortridge*, 56 Mo.
126. If, under its granted powers, a municipality
cannot provide sufficient revenue, in the opinion of
its officers, for municipal purposes, the only alter-
native, if its limit of indebtedness has already been
reached and its financial honor is to be preserved, is
either an application to the legislature for more ex-
tended powers of taxation, or a reduction of expenses
so as to bring them within the income. By the con-
stitution the legislature is required in granting char-
ters to municipal corporations to restrict their powers
of taxation: Constitution of Oregon, article XI, § 5.
In obedience to this provision of the fundamental law
it is provided in the charter of the defendant city that

taxes for general municipal purposes, which of course includes the payment of its outstanding obligations, unless otherwise provided in the law under which they were created, shall not exceed 8 mills on the dollar.   The object of this limitation is manifestly to secure the property-owner against onerous and excessive taxation, and to enforce economy in the expenditure of public money.   It was the evident intention of the legislature that the amount of revenue derived from the 8-mill tax, and no more, should be raised by the City of Portland from the taxable property of its inhabitants in any one year for general municipal purposes, and no additional amount can be collected for that purpose by an unauthorized special levy for some item of general municipal expense.   If the provisions of the charter could thus be avoided, it would afford no protection to the taxpayer whatever, would be no restraint upon official extravagance, and would utterly fail to accomplish the purpose intended by the legislature and the framers of the constitution.

But it is claimed that the act of 1891, creating the defendant municipality, imposed upon it a part of the present bonded indebtedness, and authorized the creation of the remainder, and, as no express provision was made for the payment of such indebtedness, it necessarily follows that it must be paid from money raised by taxation.   No doubt this is true, but it does not follow that a special tax in addition to the general tax authorized by the charter may be levied for that purpose.   The limitation upon the taxing power contained in the act imposing and authorizing the creation of such indebtedness plainly repels the

inference that the legislature intended to authorize the levy of an additional or special tax with which to pay it. It is often said that authority to a municipal corporation to create a debt implies power to raise the means with which to pay it by taxation, but this is true in a general sense only. Of course every lawful debt of a municipality is a liability against it, and payable from its general funds, unless otherwise provided, and as the usual, and indeed, generally, the only, means a city has of raising money is by taxation, it necessarily follows that its indebtedness must be paid from the revenue thus derived. But it is not believed that mere authority to create a debt authorizes, per se, the levy of a special tax for its payment. It is quite true, as we have remarked, that the right of a municipality to incur an obligation generally implies the right to pay it by taxation, but such right must always be exercised in accordance with the provisions of the law conferring the power of taxation, and in subordination to the limitations imposed by the legislature on the exercise of such power. If, therefore, the power of a municipality to levy taxes is expressly limited to a certain amount, an authority to contract debts or incur other obligations will not alone justify an inference that the power to levy an additional tax to pay such debts or obligations was also conferred: *Shackelton* v. *Town of Guttenberg*, 39 N. J. Law, 660. It follows that the special 2-mill tax levied by the defendant municipality for the purpose of paying the interest on its bonded and other indebtedness is unauthorized and void. The decree of the court below is therefore reversed, and a decree will be entered here enjoining the collection thereof.

REVERSED.