# SUPREME COURT

OF THE

## STATE OF COLORADO.

## September Term, 1904.

[No. 4788.]

THE CITY COUNCIL OF THE CITY AND COUNTY OF DEN-
VER V. THE BOARD OF COUNTY COMMISSIONERS
OF ADAMS COUNTY.

|  |  |
|---|---|
| 33 | 1 |
| 33 | 47 |
| 33 | 1 |
| j34 | 315 |

1. Taxes and Taxation—Maximum Rate by Counties—Ordinary
and Extraordinary Revenue—Mandamus.

Where a county was divided into three new counties, and
the new county, which, under the division acquired all the county
buildings and property, was required to pay to the other counties
their proportional part of the value of such county property, a
levy of a tax to meet such payment was a levy for extraordinary
and not for ordinary county purposes, and Session Laws 1899,
page 330, limiting the rate which may be levied by counties of
the first class to three mills on the dollar of valuation does
not apply to such levy, and where a writ of mandamus was
issued requiring the board of county commissioners to levy a
tax for the purpose of creating a fund to pay for such public
property, the board could not evade such writ by levying the

maximum rate for ordinary county purposes after service of the alternative writ.

**2.   Division of Counties—Apportionment of County Property— Constitutional Law—Parties.**

Where a county was divided into three counties, and the act making the division required the county to which the county property was awarded to pay to the other counties their respective proportions of the value of such county property and directed that the boards of county commissioners of the respective counties should carry out the commands of the act, the boards were the representatives of the legislature in carrying out the purpose of the act and are not competent to raise the question of the constitutionality of the act, but such question must be raised, if at all, by those directly interested in and affected by its provisions.

**3.   New Counties—County Property—Constitutional Law.**

In the absence of a constitutional limitation, it is competent for the legislature at the time it carves out a new county from the territory of an old one, or by subsequent legislation, to adjust the property rights and equities existing between the two.

**4.   Statutes and Constitutions — Contemporaneous Legislative Construction.**

A contemporaneous legislative construction of a statute, or constitutional provision, while not conclusive with the courts, is persuasive.

**5.   Constitutional Amendments—Date of Taking Effect—Stipulation.**

The date of taking effect of a constitutional amendment cannot be established by admission or agreement of counsel, but must be determined by the court.

**6.   City and County of Denver—Date of Creation—Obligations.**

Whether article 20 of the constitution took effect on the day it was voted for by the people or at the date of the governor's proclamation declaring the result of the official canvass, the city and county of Denver which it created did not come into being until the day of the governor's proclamation, December 1, 1902, and the obligations assumed by said city and county under article 20 were such as existed when it became an organized body and included the claim of Adams county for its proportion of the value of the property of old Arapahoe county established by the act creating the new counties.

**7.   City and County of Denver—County Revenue—Power of Legislature.**

The city and county of Denver as created by article 20 of

the constitution is still a county, and the general assembly, except as otherwise provided in article 20, has the same control over its county funds as it has over the funds of other counties, and unless limited by the constitution may make such provisions for raising and disbursing county revenue as seem to it wise and proper.

8. City and County of Denver—Liability to Cther New Counties —Mandamus.

Article 20 of the constitution, creating the city and county of Denver, conferred upon said city and county all the property belonging to, and made it liable for the obligations of, the county of Arapahoe from the territory cf which said city and county was taken, but made no specific provision for the payment to other new counties created out of said Arapahoe county cf their proportion cf the value of said county property. The same session cf the legislature which submitted article 20 as an amendment to the constitution passed an act creating two new counties out cf the territory of Arapahoe county to take effect if such amendment was adopted, and by said act provided for the payment to said counties by the city and county cf Denver cf their proportion of the value of the property belonging to Arapahoe county. Held, that the city and county of Denver is liable to such other new counties for said proportional value and its city council may be compelled by mandamus to levy a tax to provide for the payment of such claims.

*Error to the District Court of the City and County of Denver.*

Mr. HARRY A. LINDSLEY and Mr. CHAS. R. BROCK, for plaintiff in error.

Mr. C. H. PIERCE and Mr. C. M. KENDALL, for defendant in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court.

This proceeding in mandamus, instituted by the board of county commissioners of Adams county against the city council of the city and county of Denver sitting as a board of county commissioners, was to compel the latter to levy a tax to pay a cer-

tain claim in favor of the county of Adams and against the city and county of Denver, which was imposed by the general assembly in connection with the dismemberment of Arapahoe county and the formation of three new counties out of its territory.

Prior to the year 1901 what may be properly designated as old Arapahoe county, was geographically the same as when our state constitution was adopted. At the regular session of the thirteenth general assembly held in that year there was before that body a general scheme to grant to its county seat, the former city of Denver, so-called home rule, which involved the subdivision of Arapahoe county into two new counties proper and the erection of a new body politic partaking of the nature and characteristics both of a city and county. To bring about this result the general assembly passed, in the form of an act, a proposed amendment to the constitution which has been submitted to, and ratified by the people, and is now known as article 20 of that instrument. By this amendment all the territory theretofore included within the outer boundaries of the former city of Denver, which inclosed several distinct municipalities and some unorganized territory, was merged into one body corporate to be known thereafter as the city and county of Denver. At the same session the general assembly passed two acts by which all of the remaining portion of the territory of old Arapahoe county was divided into two parts, one of which was made into the new county of Adams, and the other into the county of South Arapahoe, which were to take effect on November 15, 1902, only in the event that the constitutional amendment was adopted. When these three measures went into effect, that which was formerly the county of Arapahoe, therefore, became three separate political subdivisions of the state, bearing the

names just mentioned; and it is apparent that the entire scheme was dependent upon the adoption of the constitutional amendment.

This amendment was voted upon at the general election held on the 4th day of November, 1902, and received a majority of the legal votes cast. Section 1 thereof provides that the new city and county of Denver shall own all of the property theretofore owned or possessed by the included municipalities and by the county of Arapahoe, and shall succeed to all the rights, liabilities and benefits, and shall assume and pay all bonds, obligations and indebtedness, of these constituent bodies. Section 3 provides that immediately upon the canvass of the vote showing the adoption of the amendment it shall be the duty of the governor to issue his proclamation accordingly, and thereupon the former city of Denver and the pre-existing municipal corporations and the designated part of the county of Arapahoe shall merge into the city and county of Denver.

In the acts of the general assembly creating the two new counties proper and carving the same out of Arapahoe county, provision was made for a division of property between them, and at the next succeeding regular session of the general assembly in 1903 the appropriate sections of these acts of 1901 were amended so as to make more definite the method of appraising the property of the respective counties, and for adjusting the equities between them arising out of the dismemberment of old Arapahoe county and the creation of the new ones.—Session Laws 1901, 133; Session Laws 1903, 159. Acting under the amendment of 1903, and in accordance with its directions, it was ascertained that the new city and county of Denver should pay to the county of Adams about sixty thousand dollars. The city and county of Denver refused to pay the same, or to levy a tax for

that purpose, whereupon this proceeding was instituted to compel the levy of the necessary tax. In the court below, as shown by the original return to the alternative writ, the only defense interposed was that the act of 1903, under which the alleged indebtedness had been ascertained, was unconstitutional. By an amendment to the return an additional defense was that no power was given to, and no duty imposed upon, the council to levy the tax demanded.

1.    The law of this state requires the levy of the annual county tax to be made not later than November 30, but if laid at a later time, it is not, for that reason, invalid. On this day the county of Adams caused a demand to be made upon the city council of Denver to pay, or levy a tax to pay, the claim in question, which the latter refused to do. These proceedings were thereupon instituted, and the alternative writ issued to which the city council made return on the 21st of December, 1903, in form, an answer, in legal effect, a demurrer. The only defense set up was that the act of 1903, by which this demand was imposed, is unconstitutional in that it places upon the city and county of Denver burdens, and provides a basis and method for adjusting the equities between these respective counties other than, and different from, those which article 20 prescribes. The court indicating that it entertained a contrary view, the respondent was permitted to file an amended return which, in substance, states that after the issuance and service of the alternative writ and the filing of the original return the respondent, on January 2, 1904, sitting as a board of county commissioners, enacted an ordinance by which it reached the limit of its power to levy a tax to raise a fund for ordinary county purposes, and caused such levy to be certified to the county assessor, and that by reason of the premises it is without authority to

make any further or additional levy for the year 1903, since its power in that respect was exhausted by the enactment of the ordinance referred to.

It was improper for the city council, after the service of the alternative writ and while the proceeding was pending, to enact any ordinance which provided for a levy inconsistent with, or contrary to, its command. Neither the original nor the amended return constitutes a defense to the writ, if the statute of 1903 is valid. The amended return certainly shows no cause why the writ should be discharged. In Session Laws 1899, 330, it is enacted that there shall be levied and assessed upon all taxable property within counties of the first class, for ordinary county revenues, including the support of the poor, and for the purpose of raising a fund to meet any unforeseen contingency, taxes at such rate as may be necessary, but not to exceed three mills on each dollar of valuation.

If this act is now applicable to the city and county of Denver, as to which we express no opinion, it certainly has no bearing upon this case. The demand which the general assembly has imposed upon the city and county of Denver is not one whose payment must be made only out of its ordinary county revenues, and it is not a claim upon either of the other two funds. It is not an expense or claim or demand against the county of an ordinary, but of an extraordinary, kind, and the power to impose it, if it exist at all, carries with it as a necessary implication the power, residing in the city and county of Denver, to pay the same and to levy a tax for that purpose other than, and in addition to, that which it may levy to secure its ordinary county revenue. This, we think, clearly appears from the authorities. —*Ralls County Court v. U. S.*, 105 U. S. 733; *U. S.*

*v. New Orleans*, 98 U. S. 381; *Scotland County Court v. U. S.*, 140 U. S. 41.

The fact that the city council assumed to make the annual levy after service of the alternative writ, did not exhaust its power in the premises or defeat the proceeding. If by such action a municipality can escape the performance of its duty, it might, by the merest subterfuge, easily repudiate all its just obligations. It was entirely competent for the district court in the circumstances of this case, as was done, before the books passed into the hands of the treasurer, to compel the council to reconvene and to correct the levy theretofore made, by amending the same, or by adding an additional levy sufficient to pay this claim, which, in fact, counsel say has been done.—*People v. Salomon*, 54 Ills. 39; *Wartman v. Wartman*, 29 Fed. Cases No. 17,210; *State v. Headlee*, 22 Wash. 126; *Sharpe v. Engle*, 2 Okla. 624; *County Comrs. v. Melvin*, 89 Md. 37.

2. The other defense to the writ, upon which plaintiff in error mainly relies, is that the act of 1903 is unconstitutional. We observe in the first place that the general assembly in this act selected as its representatives for carrying out its commands those who were acting as boards of commissioners of the respective counties. They were mere instrumentalities of the state government for the accomplishment of its purpose, and the general rule in such cases is that it is not competent for them to raise the question of the constitutionality of the statute under which they are to act, but this question should be left to those who are directly interested in, and affected by, its provisions.—*People v. Ames*, 24 Colo. 422; *Ames v. People*, 26 Colo. 83; *People v. Salomon, supra.*

That, in the absence of a constitutional limitation, it is competent for the legislature, at the time it carves out a new county from the territory of an

old one, or by subsequent legislation, to adjust the property rights and equities existing between the two, is well settled.—*Frost v. Pfeiffer,* 26 Colo. 338; *County Comrs. v. County Comrs.* 17 Colo. 41; *People v. Alameda County,* 26 Calif. 641; *Perry County v. Conway County,* 52 Ark. 430; *Board of Education v. State,* 64 Kan. 6; *Riverside County v. San Bernardino County,* 134 Calif. 517; *Sangamon County v. City of Springfield,* 63 Ills. 66. This power has often been exercised with us, as an examination of our statutes discloses.

But it is said that when article 20 gave to the new city and county of Denver all the property theretofore owned by the old county of Arapahoe and required the new municipality to pay all the latter's bonds, obligations and indebtedness, this was a complete adjustment of the rights and equities of the two by a constitutional amendment which was intended to be, and was, exclusive of any other legislative arrangement, and that only such burdens as existed when the new county sprang into existence were contemplated. The general assembly during the same session at which it prepared, in the form of an act, the submission of this constitutional amendment, passed an act for the creation of the county of Adams, and another for the county of South Arapahoe, and therein made provision for an ascertainment and settlement of the claims and demands which the two new counties might have against Arapahoe county out of whose territory they, as well as the city and county of Denver, had been formed. Possibly because of indefiniteness, or lack of time for its execution, the act of 1901 seemed not susceptible of practical enforcement. However that may be, the general assembly in 1903, as it might do, amended the earlier act whereby its uncertainties were removed. Under this last act the respective officers of the city and

county of Denver and the county of Adams, who were therein designated, without objection on the part of any of them to such procedure, made the appraisal of property and ascertained the amount due to Adams county.

While it is not conclusive with the courts, nevertheless a contemporaneous legislative construction of a statute or constitutional provision is persuasive. Here we are bound to conclude that the same general assembly which submitted the constitutional amendment, when it passed the Adams county act, did not suppose that the amendment was intended to settle, or that it did adjust, definitely the respective property rights and liabilities growing out of the subdivision of old Arapahoe county into three new political subdivisions, or that the act of 1901 or 1903 contained hostile provisions, and we must construe these various acts so as to bring harmony out of them, if sound canons of construction permit.  There is nothing in the language of section 1 of article 20 which is inconsistent with the legislative interpretation. Indeed, we think it clear that the intention was to leave to the general assembly the power which it assumed to exercise in the act of 1901 and later in the act of 1903.

In the court below and upon the application for a supersedeas, the attorneys for the city and county of Denver expressly stated that the constitutional amendment went into effect on the 1st day of December, 1902, when the governor issued his proclamation declaring the result of the official canvass of the vote. Upon final hearing, however, this position was abandoned, and learned counsel now say that this amendment took effect *eo instanti* upon the day of the general election when a majority of the people ratified it.  Of course, such a fact, if it be a question of fact, is not established by admission, or agreement, of

counsel; and if it be a question of law, it is for the courts, and not for counsel, to settle. And owing to the doubts and uncertainties arising out of the adop-tion of article 20, which are not altogether dispelled by the most attentive study, we are not inclined to hold counsel to the strict rule which forbids the taking of inconsistent positions.

The reason for the insistence by counsel upon their latest contention becomes apparent when it is observed that in the act creating Adams county was the declaration that it should take effect on the 15th day of November, 1902, and only if the constitutional amendment was adopted. If, say counsel, the constitutional amendment was not in force until the first day of December, 1902, the day of the proclamation, the Adams county act was a valid law sixteen days before; but if the amendment became effective at once upon its ratification, then the city and county of Denver became an organized body eleven days before Adams county was created. Therefore they draw the conclusion that *the* Arapahoe county from which Adams county was taken was not the *original* Arapahoe county out of which the city and county of Denver was carved, but it comprised only so much thereof as was left after the city and county of Denver was segregated. The argument proceeds further, and it is that Adams county therefore could not equitably claim to be the beneficiary—nor could the legislature make it such—of any indebtedness which original Arapahoe county owed, which, and which only, the city and county of Denver was to pay; because, as already said, the territory now composing Adams county was no part of the original Arapahoe county from which the city and county of Denver was taken, but was created out of that part left after the latter was formed.

We do not concede that this argument is valid,

even if the city and county of Denver became a county before Adams county was created. For the purpose of the present case we may safely assume that the constitutional amendment as a law, or as a part of the organic act, went into effect on the day the majority of the electors voted for it, November 4, 1902. From this, however, it does not follow that the new city and county of Denver, for whose organization it provided, became a body politic on the day that the amendment itself became a part of the constitution. This question was recently before our court of appeals in the case of *Boston & Colo. S. Co. v. Elder,* 20 Colo. App., 77 Pac. 258. That tribunal, speaking by President Judge Thompson, in effect, held that the city and county of Denver was not brought into being until the day that the governor issued his proclamation stating the result of the official canvass. The learned judge well says that a law is none the less effective as such because it provides for something to be done in the future. While the amendment may have become effective when adopted by a majority vote, it fixed a time in the future at which the consolidation it provided for should take place. So we may safely say here that the amendment itself became effective November 4, 1902, when it was ratified by the people, but the city and county of Denver for which it provided did not come into being until the day of the issuing of the governor's proclamation, on December 1, 1902, for the amendment itself expressly so provides. This being so, we think it necessarily follows, even from article 20 itself, that included in the obligations that the new city and county of Denver assumed were such as existed when it became an organized body, and those certainly include this equitable claim of pre-existing Adams county which the general assembly made a legal one in the creating act.

But, aside from these considerations, it is clear that the intention of the law makers and the people, to be gathered from the amendment and the acts creating Adams and South Arapahoe counties, was that the adjustment of the property rights and respective claims and liabilities of these three new political subdivisions of the state with reference to each other was intended to be left to the general assembly for determination. The city and county of Denver is still a county, as well as a city.—*People v. Sours*, 31 Colo. 369. The general assembly, except as otherwise provided in article 20, has the same control over its county funds that it has over the funds of other counties. And unless limited by the constitution, may, in general, make such provisions for raising and disbursing county revenue as seem to it wise and proper.

Recurring again to the situation that confronted the legislative department, let us see what measures it adopted to perfect the plan in the legislative mind. Old Arapahoe county was subdivided into three new bodies politic. All of the property owned or possessed by original Arapahoe county was given to the new city and county of Denver. This property was acquired from taxes levied upon all the property of the old county. To the revenue thus derived, and so used, the territory which was set off to the county of Adams contributed its portion, as did the territory which was constituted into the county of South Arapahoe. The constitutional amendment made no specific provision for the payment by the new city and county of Denver to the county of Adams or to the county of South Arapahoe for their proportionate interest in this county property, but provision was made for payment by the new city and county of Denver of all the obligations and liabilities of the county of Arapahoe, and to its rights these newly

created counties succeeded. When, therefore, that portion of old Arapahoe county, exclusive of the city and county of Denver, was subdivided into the two counties, it was entirely competent for the general assembly to provide that the successor of all the property of Arapahoe county, viz., the new city and county of Denver, should pay to each of the new counties, the other constituent elements of the original county, a just proportion of the value of that property which their citizens and taxpayers helped to buy. That is all that has been done in this case. There is nothing in the constitutional amendment opposed to this view, and the separate acts of the general assembly expressly authorize it.

The judgment of the district court ordering this tax to be levied was right, and its judgment is, therefore, affirmed.                               *Affirmed.*