No. 12,975.

HENRY WILCOX AND SON v. RIVERVIEW DRAINAGE DISTRICT ET AL.

(25 P. [2d] 172)

Decided June 26, 1933. Rehearing denied September 18, 1933.

Messrs. PERSHING, NYE, TALLMADGE, BOSWORTH & DICK, Mr. JOHN PERSHING, for plaintiff in error.

Mr. ARTHUR C. GORDON, Mr. GORDON ALLOTT, for defendants in error.

Mr. W. W. PLATT, amicus curiae.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiff in error is hereinafter referred to as plaintiff and defendants in error as the district.

Plaintiff, holding certain bonds of the district, brought mandamus to compel the district to make an additional tax levy to pay them. Its general demurrer to the answer was overruled and it elected to stand. To review the judgment of dismissal thereupon entered against it this writ is prosecuted.

The district was organized in 1921 under our drainage statutes, hereinafter referred to, and issued $50,000 in bonds. As required by said statutes the benefits to accrue from the construction of the contemplated works were appraised (at approximately three times the amount of the bond issue) and apportioned to the lands accordingly. A levy which, if paid, would care for said bonds and interest, was made. Tax collections have been insufficient to meet these bonds as they matured, lands have been sold with no bidders and the district has taken certificates, hence plaintiff's bonds, of the face value of $5,500, are due and unpaid. If said certificates are redeemed and all delinquent assessments finally collected, as the demurrer admits must eventuate, plaintiff can and will be paid. It insists it is entitled to an additional assessment to pay its securities. The district contends that plaintiff must await ultimate collections and show an ultimate delinquency.

Our Drainage District Act was passed in 1911 and amended in 1913, 1915 and 1919. S. L. 1911, p. 311, c. 124; S. L. 1913, p. 252, c. 75; S. L. 1915, p. 296, c. 103; S. L. 1919, p. 394, c. 115. It is now sections 2107 to 2199, inclusive, C. L. 1921.

A "method of assessment" for such districts was provided by sections 53, 54, 55, 55a, 55b, 55c, 55d and 55e of the act of 1913. These are sections 2161 to 2168, inclusive, pp. 715-718, C. L. 1921. Thereunder assessments were apportioned to benefits and the total was limited to

the cost of construction. Under that method there could be no cumulative or additional levy on lands which paid, to meet the deficiency caused by others which did not. That proposition, as applied to irrigation districts, was settled by this court in 1919. *Interstate Trust Co. v. Montezuma Valley Irr. Dist.*, 66 Colo. 219, 181 Pac. 123.

All this was presumably known to the General Assembly when, in 1919, it amended the Drainage District Law "by adding thereto section 55F providing an alternative method for the assessment of benefits to the lands in the district." This is section 2169, p. 718, C. L. 1921. It contains the following language:

"As an alternative method for assessment of the lands in the district, and in lieu of the method of assessment provided by sections 53, 54, 55, 55a, 55b, 55c, 55d and 55e of this act, the board of directors may adopt the following method for the assessment of the benefits derived from the system of drainage adopted:

\* \* \*

"In case bonds are issued, said tax shall be divided into such number of annual installments as will meet the requirements of and will provide for the punctual payment of the interest upon and the principal of the bonds as the same accrue. In case the proceeds of the original tax levy made under the provisions of this act are not sufficient to pay the principal of and the interest upon all of the bonds which may at any time be issued under the provisions of this act, then the board of directors shall make such additional levy or levies upon the benefits assessed (but not in excess thereof) as are necessary to pay such principal and interest \* \* \*."

November 22, 1921, the district passed a resolution which recites its assessment of benefits, its report, a notice of hearing, the adoption of its schedule of benefits and estimated cost, and the apportionment of the benefits to the respective tracts, and continues:

"Whereas, all of the same was done in pursuance of the requirements of Section 55F \* \* \*.

"Whereas, it is now necessary to levy enough special assessment on said lands according to assessed benefits, to pay principal and interest each year as the same may become due * * *."

■ In the beginning it should be noted that, in view of the Interstate Company case above cited, which holds contrary to *Norris v. Montezuma Valley Irr. Dist.*, 248 Fed. 369, and the further cases of *Thomas v. Henrylyn Irr. Dist.*, 79 Colo. 636, 247 Pac. 1059 and *Board of Commissioners v. Heath*, 87 Colo. 204, 286 Pac. 107, said section 55F, if given the interpretation here contended for by plaintiff, wrought a radical change in the law in this jurisdiction. Such an interpretation can only be justified in case of a clear expression of the legislative intent. In our examination we assume, but do not decide, the power of the General Assembly to so legislate.

■ Again, whether the construction contended for by plaintiff will impose an unbearable burden upon landowners in drainage districts; whether that contended for by the district will create a serious impediment to the marketing of securities; and whether the additional levy demanded will be effective as a practical measure, are legislative, not judicial questions, which, though argued, we must ignore in considering plaintiff's right to the relief prayed for. It may be pertinent in that connection, however, to note that our conclusions in the Interstate Company, Thomas and Heath cases, supra, were reached at a time when consideration of the legal problems involved was unencumbered by such extraneous issues, injected by the present economic crisis.

■ It is here admitted, and well to bear in mind, that, in their general character, irrigation districts and drainage districts are substantially identical, that they have no general taxing powers, that the taxes they levy are local assessments, and that their authority in the premises is limited and should be strictly construed.

In contending for the applicability of the Interstate Company case, supra, the district maintains that the writ

here sought would result in compelling one landowner to pay for another's benefits; while plaintiff insists that since the additional levy on any tract is limited to the extent of the benefits to that tract the district's contention is erroneous. Plaintiff's position amounts to this: A and B install, for $100, an improvement worth that sum to each, and give their joint note for the purchase price. B defaults and A pays the whole debt. But since A thus pays no more than the total of his own benefits he has paid nothing for B. The theory is unsound. The fact is they negotiated a contract in which each had a profit of $50, and A has been forced to use his profit to pay for B's benefits.

Plaintiff contends that said section 55F is express authority for the levy it now demands and that it has been so interpreted by the district by its said resolution, and other acts. If said section is not such authority (and no other statutory authority is claimed) the district's interpretation is immaterial. Its directors can make, by their own construction, no law detrimental to, and binding upon, its landowners. That proposition is too clear to require elucidation. We therefore devote ourselves to an examination of the section itself, in search of the authority it is said to contain. If it supports plaintiff's position it must be by reason of one or both of two provisions thereof. The first is that the tax levied, and the installments into which it is divided, shall be such "as will meet the requirements of and will provide for the *punctual payment* of the interest upon and the principal of the bonds as the same accrue." But this precedes any assumption of default in payment and relates solely to the first levy and division made by the directors. While it, of course, contemplates punctual payment, it hints at no remedy in case of failure. This is no more than to say that each bond is payable "at a given time," and such is the language of our irrigation district law. C. L. 1921, p. 662, §1983. It is no more than to say that the levy must be such as is necessary

to provide money to pay said bonds and interest "as the same shall become due," and such is the duty imposed upon county commissioners in the case of irrigation districts. C. L. 1921, p. 669, §1997.

The second debatable provision of the section is that which makes it mandatory on the board of directors to make an additional levy "in case the *proceeds* of the original tax levy made under the provisions of this act are not sufficient to pay the principal of and the interest upon *all of the bonds* which may *at any time* be issued." "Proceeds" need not mean cash. 50 C. J. 427. If such had been the legislative intent it was easy to use the word and avoid confusion. "Proceeds" is whatever the levy produces. It may be cash, it may be tax sale certificates, it may be both. If it means either or both, plaintiff is not entitled to the writ, for it is conceded that the original levy has resulted in sufficient "proceeds" to meet its demands. Again, how much "proceeds" must be produced to avoid an additional levy? Enough to pay "*all* of the bonds which may *at any time* be issued." If this language was intended to compel an additional levy whenever the "proceeds" were insufficient to pay the first, why the words "all," and "at any time"? It seems to us that elsewhere in the act may be found the answer to this query.

Section 2185, p. 723, C. L. 1921, provides for the issue of *additional bonds* when necessary and authorized by the voters of the district, and directs that the lien for taxes for the payment of prior issues shall be superior to that for subsequent issues. It makes no provision, however, for additional levies to meet additional issues. It might well be, if the additional issue were small, that the previous levy would cover it; if not, authority for an additional levy "to pay the principal of and the interest upon *all* of the bonds which may *at any time* be issued" is provided by the questioned language in said section 55F. If such, as we believe, be the purpose of the

quoted phrases, then said section contains no authority for the cumulative or additional levy to pay the original issue, now contended for by plaintiff. If such be not their purpose then the General Assembly has but vaguely expressed the legislative intent when an unequivocal expression thereof was easy and essential.

Our conclusion is that, irrespective of said section 55F, those who, in a drainage district, pay their taxes, stand upon the same footing and are afforded the same protection as those who, in an irrigation district, do likewise. Neither can have pyramided upon them the taxes of those who do not pay. In each case the purchasers of bonds have been fairly warned that they must look to each tract for the taxes levied thereon, and not to the whole. If cash fails their security awaits them.

The judgment is affirmed.