## No. 14,882.

## GORDON *v*. WHEATRIDGE WATER DISTRICT ET AL.

(109 P. [2d] 899)

Decided January 13, 1941.

Mr. THOMAS KEELY, for plaintiff in error.

Mr. EMORY L. O'CONNELL, Mr. MYLES P. TALLMADGE, for defendants in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

THE questions presented in this proceeding pertain to the alleged unconstitutionality of chapter 175, S.L. 1939 (chapter 173A, 1939 Supp. '35 C.S.A.), providing for the organization of water and sanitation districts and arise on the issues raised by the demurrer of defendant in error district to the complaint of plaintiff in error, to whom we shall refer hereinafter as plaintiff, seeking a declaratory judgment and injunctive relief with respect to the matters involved. The district court sustained the demurrer and upon plaintiff's election to stand on his complaint, the court, in conformity with the practice under the Uniform Declaratory Judgments Law (sections 78 to 92 inclusive, chapter 93, '35 C.S.A.), made certain findings and entered a decree wherein it was determined and declared, in substance, that the district, located in Jefferson county, had been organized, its officers elected and the issuance of its bonds in the principal sum of $90,000 authorized by the electors of the district, strictly in accordance with the provisions of the act first above cited; that such law was not unconstitutional, invalid or unenforceable on any of the grounds alleged in the complaint, and that the officers of the district might lawfully issue the bonds thereof and levy a tax on all of the taxable real property in the district for the payment of said bonds and interest thereon. Plaintiff does not contend that deviation from the terms of the act occurred in the organization of the district or in any of the subsequent transactions mentioned but, as he did in the trial court, asserts that the act itself offends the Constitution in four particulars.

First, it is said the act violates section 21 of article V of the Constitution which forbids, (1) the union in the same legislative bill of separate and distinct subjects, and (2) requires that the subject treated in the body of the bill shall be clearly expressed in the title. The enactment under consideration is entitled: "An Act for the Organization of Water and Sanitation Districts and to Define the Purposes and Powers Thereof." S.L. 1939, p. 597. Premised on the circumstance that section 2 thereof defines two types of districts, viz.: "Water district" as "one to supply water for domestic purposes by any available means," and a "sanitation district" as "one to provide for sewage disposal," and further states that "A district may be created for a combination of water and sewer purposes," the plaintiff argues that the formation of three distinct and separate classes of districts are contemplated by the act, as a result of which it is said the act either embraces more than one subject, or that the provisions of the act itself are not in all particulars germane to the title. Our examination of the measure leads to a diverse conclusion. Clearly, we think, the contents of the entire statute merely provide for the organization and operation of districts which may perform any one or more of the defined functions singly or in combination. In other words, the latter functions are merely germane or subordinate to the main object expressed in the title, and, hence, no constitutional inhibition arises on this score. See, *Fahey v. State,* 27 Tex. App. 146, 11 S.W. 108, 11 Am. St. Rep. 182.

As to the second mandate of the Constitution, supra, we are satisfied the title fairly expresses the subject matter of the act in such manner as to convey to the mind an indication of the object to which it relates, which is the criterion of sufficiency expressed in *Johnson v. Harrison,* 47 Minn. 575, 50 N.W. 923, 28 Am. St. Rep. 382. *In Re Breene,* 14 Colo. 401, 24 Pac. 3, we said: "The general assembly may, within reason, make the

title of a bill as comprehensive as it chooses, and thus cover legislation, relating to many minor but associated matters. For example, an act entitled: 'An Act in relation to municipal corporations' may provide for the organization, government, powers, duties, offices and revenues of such corporations, as well as for all other matters pertaining thereto. 'The generality of a title,' says Judge Cooley, 'is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection.' Const. Lim. (5th ed.) 174. It is not essential that the title shall specify particularly each and every subdivision of the general subject."

It would seem in considering the constitutional sufficiency of the title of the enabling act for a public corporation of the pattern under scrutiny here that, in the sense above expressed, the standard applicable to municipal corporations should attain. We, therefore, conclude that plaintiff's first objection is without merit.

■ Section 13, (1) of the act, relating to the powers of the board of directors, recites: "To fix and from time to time to increase or decrease water and sewer rates, tolls or charges for services or facilities furnished by the district, and to pledge such revenue for the payment of any indebtedness of the district. *The board shall fix such rates, tolls or charges as shall be approved by the public utilities commission of the state of Colorado."*

As his second contention, plaintiff asserts that the above provision for approval by the Public Utilities Commission of rates to be fixed by the board of the water district, violates section 8, article XVI of the Constitution in that the board of county commissioners of the county in which the water district may be located thereby is deprived of the constitutional power conferred by the article and section last cited to establish reasonable maximum rates to be charged for the use of water. In so far as we are advised this constitutional provision

has never been considered other than in controversies relating to the reasonableness of charges fixed by carrier ditches for the bulk carriage of water, and the statutes enacted in pursuance of this mandate seem to be so limited. See, chapter 90, §139, et seq. '35 C.S.A. It might be urged with logic that such section of the Constitution has no application in situations, seemingly paralleled in the proceeding before us, where water is distributed by quasi-municipal corporations through a system of pipe lines of small capacity solely for domestic purposes, including sewerage and sewerage disposal, involving many factors such as purefaction, filtering, and precipitation, not encountered in carrier ditch operations as ordinarily understood. However, we need express no convictions on the subject, and we do not, since, as we said in *People ex rel. v. Letford,* 102 Colo. 284, 79 P. (2d) 274, on the basis of reasons there assigned in detail concerning similar objections directed to the Water Conservancy Act of Colorado, chapter 266, S.L. 1937, chapter 173B, 1939 Supp. to '35 C.S.A.: "In any event, these matters have no bearing upon the primary validity of the organization of the district or the act authorizing it and, at the most, the district administration would be subject to the regulatory power of the county commissioners."

Involved in the remaining objections are the following sections of the act:

"Section 14. In addition to the other means of providing revenue for such districts as herein provided, the board shall have power and authority to levy and collect ad valorem taxes on and against all taxable real property within the district."

"Section 15. To levy and collect taxes as herein provided, the board shall, in each year, determine the amount of money necessary to be raised by taxation, taking into consideration other sources of revenue of the district, and shall fix a rate of levy which, when levied upon every dollar of assessed valuation of real property

within the district, and with other revenues will raise the amount required by the district annually, to supply funds for paying expenses of organization and the costs of construction, operating and maintaining the works and equipment of the district, and promptly to pay in full, when due, all interest on and principal of bonds and other obligations of the district, and in the event of accruing defaults or deficiencies, an additional levy may be made as provided in section 16 hereof. * * *."

"Section 16. The board in certifying annual levies as herein provided, shall take into account the maturing indebtedness for the ensuing year as provided in its contracts, maturing bonds and interest on bonds, and deficiencies and defaults of prior years, and shall make ample provision for the payment thereof. In case the moneys produced from such levies, together with other revenues of the district, are not sufficient punctually to pay the annual installments on its contracts or bonds, and interest thereon, and to pay defaults and deficiencies, then the board *shall make such additional levies of taxes as may be necessary for such purposes, and notwithstanding any limitations, such taxes shall be made and continue to be levied until the indebtedness of the district shall be fully paid.*"

Section 17 provides that it shall be the duty of the proper county officers to levy and collect the taxes as other general taxes.

Section 18 provides that, "If the taxes levied are not paid * * * then the delinquent real property shall be sold at the regular tax sale for the payment of said taxes, interest and penalties, in the manner provided by the statutes of the state of Colorado for selling property for the non-payment of general taxes."

"Section 19. Whenever any indebtedness has been incurred by a district, *it shall be lawful for the board to levy taxes and collect revenue for the purpose of creating a reserve fund* in such amount as the board may determine, which may be used to meet the obligations

of the district, for maintenance and operating charges and depreciation, and provide extensions of and betterments to the improvements of the district."

Since plaintiff's third and fourth objections are primarily directed to the foregoing sections of the act, we shall consider them together. In a sense these contentions are reciprocal and alternative. The third asserts that if the act is to be construed as attempting to authorize a special or local improvement district, it is violative of section 25, article II of the Constitution, and, corollarially, of the due process clause, section 15, article II thereof, in that in the act the general assembly neither fixed the boundaries of the districts nor determined that all of the property therein would be benefitted by the improvement and did not provide for the apportionment of benefits to the property and the levying of proportionate assessments there-against or for notice of hearing thereon.

Fourthly and lastly, plaintiff urges that if the tax authorized by the sections hereinabove set out is considered as being a general tax, the circumstance that it may be imposed only on the real estate of the district and not upon both real and personal property therein, places the act in conflict with section 3 of article X of the Constitution requiring that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal," and with section 6 of the same article providing that all laws exempting property from taxation which is not otherwise constitutionally exempt shall be void. See, also, section 15, article X. The district concedes that for the reasons stated in plaintiff's third objection, supra, the act cannot be upheld on the theory that it authorizes special or local improvement districts. That the objection is sound and the confession justified permits of no

doubt. In Colorado, where the cost of a local improvement is to be paid by special tax or assessment, the taxpayer has a right to be heard, after notice, upon the question of benefits and the proportion of the general cost which may be assessed against him—at least where there is no legislative determination thereof—and a denial of that right is a violation of the constitutional mandate. *People v. Lee,* 72 Colo. 598, 213 Pac. 583; *Milheim v. Moffat Tunnel District,* 72 Colo. 268, 211 Pac. 649; *People ex rel. v. Letford, supra.*

■ Further, in so far as an act attempts to provide for cumulative levies of special taxes to discharge delinquencies of local improvement districts, it is unenforceable under the doctrine announced in *Interstate Trust Co. v. Montezuma Valley District,* 66 Colo. 219, 181 Pac. 123. See, also, *Wilcox v. Riverview District,* 93 Colo. 115, 25 P. (2d) 172, and *People ex rel. v. Letford, supra.*

■ With the third contention eliminated from consideration and consequently all question as to whether the tax authorized is *not* a special assessment or special tax based upon the theory of apportionment of benefits and costs removed, it would seem that the exaction authorized by the act, of necessity, must be a general tax, since that is the only other type of direct tax which may be levied upon tangible property under our system of taxation. For a discussion of distinctions between general and special taxes, see, *Illinois Central R. R. Co. v. City of Decatur,* 147 U.S. 190, 13 Sup. Ct. 293, 37 L. Ed. 132; *City of Denver v. Tihen,* 77 Colo. 212, 235 Pac. 777, and *People ex rel. v. Letford, supra.* Indeed, the terms of the act itself proclaim that the legislature intended the tax to be general. The deliberate omission of any method for the determination of benefits and the imposition of assessments otherwise is unexplainable. Section 7 of the act provides inter alia that a district "shall be a governmental subdivision of the state of Colorado and a body corporate, with all the powers of

a public or quasi-municipal corporation." If the district is such and no question is here raised on this point, the power to levy general taxes on all property, real and personal, within the district may be conferred by the legislature. *People ex rel. v. Letford, supra.* Section 14, supra, states: "The board shall have power and authority to levy and collect *ad valorem taxes* on and against all taxable real property within the district." The method and manner of the levy and collection prescribed by the succeeding sections is in precise accord with that followed in the case of general taxes. For these reasons we must conclude that the exaction imposed was intended to be a general tax. Being such, it must conform with the uniformity and exemption clauses of the Constitution. That it does not so comply is evident from the fact that in laying a tax on realty solely, the act excepts and exempts personalty. The act in so far as it attempts to authorize this result thus is void. Illustratively, if the legislature has conferred power to levy a general tax *on all property* and the district sought to tax realty *alone,* the attempt clearly would be a nullity. Logically, we cannot conceive how a law which, in the first instance, so restricts, could have greater validity.

In our opinion the authorities cited by the district as maintaining its theory that the exemption authorized by the act is a third type of direct tax in special tax districts, do not support such classification, since the taxes therein authorized in reality fall into the categories of: (1) special assessments in local improvement districts, where, differently than here, the legislature fixed boundaries and determined benefits or provided the means for so doing; (2) or general taxes for general purposes. In jurisdictions where a tax of the latter type imposed on realty alone was sustained, no provisions similar to those contained in sections 3 and 6, article X, of our Constitution were involved.

█ The district affirmatively urges that even if the questioned tax last discussed is unconstitutional because

of the deficiencies we have just declared, the act still contains provisions which will permit the levy of general taxes on both real and personal property in the district. As so permitting the district points to the italicized language in sections 16 and 19 hereinabove quoted. Obviously, we think, the words "additional levies of taxes" contained in section 16, and the power "to levy taxes and collect revenue" for creating a reserve fund, as mentioned in section 19, simply refer to the limited tax on realty authorized by section 14 and were not intended to confer any additional or other taxing power beyond that specified therein. In addition to the general context of the provisions for financial administration, this construction is made specifically evident from the fact that in section 15, providing for the *levy of the limited tax,* the legislature importing identity adds "in the event of accruing defaults or deficiencies, an additional levy may be made *as provided in section 16 hereof."*

■■ As corollary to the foregoing, the district next contends that the power to issue bonds as conferred by section 13 (e) and section 23 of the act, carries with it the power to levy such general taxes as may be necessary to pay the bonds and the interest thereon. In support of this proposition, among other authorities, are cited *City v. Board of Commissioners,* 33 Colo. 1, 77 Pac. 858; *Ralls County Court v. United States,* 105 U.S. 733, 26 L. Ed. 1220; *Scotland County Court v. United States,* 140 U.S. 41, 137 Sup. Ct. 697, 35 L. Ed. 351. From an examination of practically all the cases of this character cited by defendants it clearly appears that such power may not be presumed if a limitation is contained in the act itself which dispels the inference of a general grant of power to levy taxes to pay bonds. Such limitation is injected in the case at bar since here the act purports to prescribe a complete method for the payment of the bonds authorized thereby. As we have seen, section 15 directs the board, after taking into consideration other

sources of revenue of the district, to make a rate of levy on real estate sufficient to pay the expenses, costs of construction, etc., and "to promptly pay in full, when due, all interest on and principal of bonds." The method of levying the tax, being thus limited, it clearly was intended by the legislature that taxes are to be imposed only as provided in the act itself, and not in an entirely different manner. Where the legislature fixes the method by which bonds are to be paid, that method not only must be followed, but the bondholder's remedy is so restricted as to require him to seek payment of his bonds out of the revenues provided by the statute. *United States v. County Court of Macon County*, 99 U.S. 582, 25 L. Ed. 331; *Potter v. County of Santa Barbara*, 160 Cal. 349, 116 Pac. 1101; *Corbett v. City of Portland*, 31 Ore. 407, 48 Pac. 428.

 Notwithstanding the power of taxation attempted to be authorized by the act is offensive to the Constitution in the particulars stated and its levy must be restrained, we are of the opinion that as against the objections here advanced, the remainder of the act is valid and the questioned features severable therefrom. This is evident from the circumstance that the act (section 14) provides that such tax was designed to supplement "other means of providing revenue for such districts" and not as the sole source thereof.

Section 31 of the act, as it appears in S.L. 1939, page 610, provides: "If it should be judicially determined that any part of this act is invalid or unenforceable, such determination shall not affect the remaining parts, it being the intention to make this act and all its parts severable."

The judgment of the district court is affirmed in part and reversed in part, and the cause remanded with directions to modify the judgment to conform with the views herein expressed.

Mr. Chief Justice Hilliard, not having heard the oral argument, does not participate.

Mr. Justice Otto Bock dissents in part.

Mr. Justice Otto Bock dissenting in part.

I dissent from that portion of this opinion construing sections 3 and 6 of article X of the state Constitution, as applied to chapter 175, S.L. 1939. In all other respects I concur.