## STUART *v.* UNION PACIFIC RAILROAD COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 135. Argued January 22, 1913.—Decided February 24, 1913.

It has already been decided by this court that the Kansas Pacific Railway Company had a right to build west of the one hundredth meridian.

It has also been heretofore decided that the Pacific Railroad Acts of July 1, 1862, and July 2, 1864, should be considered and construed as one act.

A right of way is a substantial and obvious benefit and if a railroad is entitled to a right of way under an act, it is entitled thereto under a later act extending the route and granting all benefits given under the earlier act.

Even though the record may not show that all the maps of definite location had been filed, a railroad company may acquire under the acts of 1862 and 1864 a right of way by actual construction of the road.

A railroad obtaining a right of way under the acts of 1862 and 1864 retains title thereto whether occupied by it or not.

All persons acquiring public lands after the passage of the Pacific Railroad Acts took the same subject to the right of way conferred by them on the proposed roads. *Railroad Co.* v. *Baldwin,* 103 U. S. 426.

Where the claimants to the same land have both paid the taxes thereon continuously, they stand on equal footing, and the payment does not establish adverse possession.

Under the acts of 1862 and 1864 the Kansas Pacific Railway Company had authority to build west of the one hundredth meridian to Denver and was entitled to a right of way two hundred feet from the center of the track, and that right is superior to claims initiated after the act of 1864, even if prior to the construction of the road; and this right is not defeated by adverse possession.

178 Fed. Rep. 753, affirmed.

THE facts, which involve the title to certain portions of the right of way of the Kansas Pacific Railway now

owned by the Union Pacific Railroad, are stated in the opinion.

*Mr. Charles A. Murray,* with whom *Mr. Thomas B. Stuart, Mr. Louis T. Michener, Mr. Perry G. Michener* and *Mr. Joseph C. Helm* were on the brief, for petitioners.

*Mr. Clayton C. Dorsey* for respondent.

*Mr. Joseph C. Ewing,* by leave of the court, filed a brief as *amicus curiæ.*

MR. JUSTICE McKENNA delivered the opinion of the court.

Suit to quiet title to the E. ½ of the N. W. ¼ and the N. E. ¼ of the S. W. ¼ and the N. W. ¼ of the S. E. ¼ of Section 20, Township 38, Range 67 West, situated in the city and county of Denver (formerly in Arapahoe County), State of Colorado.

The suit was brought in the District Court of the city and county of Denver against the Kansas Pacific Railway Company, the Colorado Eastern Railroad Company and the Union Pacific Railroad Company and removed on the petition of the latter company to the United States Circuit Court for the District of Colorado, on the ground of a separable controversy. A motion to remand was made and denied. The railroad company answered, joining issue as to so much of the lands as constituted a tract 200 feet in width on each side of its road. It asserted title as successor of the Kansas Pacific Railway Company, which had been granted the tract as a right of way, it was alleged, by the acts of Congress generally denominated the Pacific Railroad Acts.

The discussion in the case will turn upon the title of the railroad rather than upon the title of petitioners. There is

no question of their title if that of the respondent company be not good. The Circuit Court held that the title of the company was good and dismissed the bill. The Circuit Court of Appeals decided that the dismissal of the bill was error; that the court should have recognized the company's title to the right of way and have quieted petitioners' title to the remainder. The decree of the Circuit Court was modified accordingly. 178 Fed. Rep. 753.

The Pacific Railroad Acts have been before this court so many times that it seems unnecessary to make further quotation from them. The first of them was passed July 1, 1862 (12 Stat. 489, c. 120): the second one, July 2, 1864 (13 Stat. 356, c. 216), and two others respectively on July 3, 1866 (14 Stat. 79, c. 159), and March 3, 1869 (15 Stat. 324, c. 127). Their relation constitutes the controversy in the case, and, simply stated, it is whether the right of way granted to the Leavenworth, Pawnee & Western Railroad Company, the name of which was changed in 1863 to Union Pacific Railway Company, Eastern Division, and in 1864 to the Kansas Pacific Railway Company, terminated at the one hundredth meridian or extended westward of that point to Denver. The petitioners contend for the former; the railroad company, for the latter.

The explicit contention of petitioners is that the right of way granted to the Kansas Pacific Railway Company (we use the latest name) does not extend to the lands in question, for that company, under its first name of Leavenworth, Pawnee & Western Railroad Company, and all other eastern branches of the main line were authorized to build only to the one hundredth meridian, and no farther.

The main line was, under the act of July 1, 1862, authorized to be constructed by the Union Pacific Railroad Company westward through Cheyenne to the western boundary of Nevada and possibly farther to meet the Central Pacific Railroad, which was authorized to

build from the coast eastward.  To the main line so con-
stituted grants of land and bonds were made and a right
of way was granted through all public lands "200 feet in
width on each side of said railroad where it may pass
over public lands."  The initial point of the Union Pacific
was to be the "100th meridian  .  .  .  between the
south margin of the valley of the Republican and the
north margin of the valley of the Platte, in the Territory of
Nebraska."

Section 9 of the act authorized the Leavenworth,
Pawnee & Western Railroad to construct a road from the
Missouri river at the mouth of the Kansas "to the afore-
said point on the 100th meridian  .  .  .  upon the same
terms and conditions in all respects" as provided for the
main line.  The road was required to be so located through
Kansas as to be between the mouth of the Kansas river
and the designated point on the one hundredth meridian,
and, it was provided, that the several roads from Missouri
and Iowa authorized by the act to connect with the same
could make the connection within the limits prescribed
in the act, providing it could be done without deviating
from the general direction of the whole line to the Pacific
coast.

There is no uncertainty in the act of 1862.  The initial
point of the main line was the one hundredth meridian,
and at that point the Leavenworth, Pawnee and Western
Railroad Company (now the Kansas Pacific Railway)
and other eastern branches were to connect with the main
line.

The next act is that of July 2, 1864, and on its provisions
arise the principal controversy in the case.  It is contended
by the respondent railroad company that the act au-
thorized the Kansas Pacific road (then, as we shall see; the
Union Pacific Railroad, Eastern Division) to build west-
ward of the one hundredth meridian, and granted it, be-
sides certain sections of the public lands, a right of way

400 feet wide, 200 feet either side of the center of its track. Petitioners oppose the contention and insist that the act only aimed to provide for the convenient connection of certain branch roads with the main trunk line at or near the one hundredth meridian and did not extend a right of way to any branch beyond the one-hundredth meridian. Comparing the two acts, petitioners say that the act of 1862 referred solely to the right of way through *public* lands. The act of 1864 referred solely to condemnation of right of way through *private* lands and to granting facilities of connection with the Union Pacific through ferries and bridges over navigable rivers. The permission to build westwardly, it is further urged, was not given to all branches but only to such as were made branches by the act of 1864. The contentions are earnestly argued and are made to rest mainly on § 9 of the act.

The act of 1864 was entitled "An Act to amend" the act of 1862, and it was provided by § 9 that " . . . any company authorized by *this* act to construct its road and telegraph line from the Missouri river to the initial point aforesaid [100th meridian] may construct its road and telegraph line so as to connect with the Union Pacific Railroad *at any point westwardly of such initial point,* in case such company shall deem such westward connection more practicable or desirable; and in aid of the construction of so much of its road and telegraph line as shall be a departure from the route hereinbefore provided for its road, *such company shall be entitled to all the benefits,* and be subject to all the conditions and restrictions, of this act; Provided further, however, That the bonds of the United States shall not be issued to such company for a greater amount than is hereinbefore provided, if the same had united with the Union Pacific Railroad on the one hundredth degree of longitude; nor shall such company be entitled to receive any greater amount of alternate sections of public lands than are also herein provided." (Italics ours.)

At the time of the passage of that act the Leavenworth, Pawnee & Western Railroad Company (now the Kansas Pacific Railway Company) was known as the Union Pacific Railroad Company, Eastern Division, in accordance with lawful authority given in 1863. The time for the completion of its line was extended, and by the act of July 3, 1866, it was given until December 1, 1866, to file the map of general route. Upon filing the map the lands along the entire line of the general route were to be reserved by the Secretary of the Interior. It was provided that the company should be entitled only to the same amount of bonds "as they would have been entitled to if they had connected their said line with the Union Pacific Railroad on the 100th degree of longitude as now required by law. And, provided further, that said company shall connect their line of railroad and telegraph with the Union Pacific Railroad, but not at a point more than fifty miles westwardly from the meridian of Denver in Colorado."

By applying very simple rules of construction to these acts and from a consideration of their purpose and the means which were deemed necessary to accomplish that purpose, we should have to reject the contention of plaintiffs. We are relieved, however, of the necessity of a lengthy discussion and one which we might consider necessary, in deference to the earnestness of counsel, by the previous decisions of this court and may rest our judgment on their authority.

The acts of Congress came up for consideration and construction in *Missouri, K. & T. Ry. Co.* v. *Kansas Pacific Ry. Co.*, 97 U. S. 491, 494, upon the very points now involved. The contest was between the two railroad companies as to which was entitled to certain lands, whether the Kansas Pacific Railway Company took them under the act of 1862 as amended in 1864, or whether the Missouri &c. Railway Company was entitled to them under a grant to it made July 26, 1866. It is mani-

fest that the issue presented was an important one and had important consequences.   The court intimated that principles and considerations upon which it should be decided affected other rights as well as those contested and necessarily gave them a proportional consideration. The opinion demonstrated it.   It was decided that the. act of 1862 and that of 1864 practically constituted one act, and the enlargement by the latter of the grant made by the former took effect at the date of the former; and "this was done,". it was said, "not by words of a new and additional grant, but by a change of words in the original act, substituting for those there used words of larger import."   It was further decided that the act of 1864 "authorized the plaintiff [the Kansas Pacific Railway Company] to construct its road and telegraph line so as to connect with the Union Pacific Railroad at any point westwardly of its initial point, in case it deemed such westward connection more practicable or desirable." This is the language, it will be observed, of § 9 of the act of 1864.   The court used it as the best means of expressing the purpose of the act.

In United States v. Kansas Pacific Ry. Co., 99 U. S. 455, the extent of the grant made by the acts of 1862 and 1864 again came up for decision, and upon issues more pertinent to the present controversy, if possible, than those in the other case.   The case concerned the extent of the lien of the Government and the liability of the company for 5% of the net earnings of that portion of the road of the company west of the one hundredth meridian.   The answer was considered as turning on the construction of § 9, supra.   Commenting on its provisions, the court said (p. 457): "It thus appears that whilst the company was authorized to extend its road west of the one hundredth meridian, if it saw fit so to do, it was entirely in its option; and if it did, it was not to expect, or have, any subsidy of government bonds for such extension."

The road was actually built to Denver, 245 miles beyond the one hundredth meridian, and upon this part of the road the Government claimed a lien as well as upon the road east of the meridian. Passing on the claim, the court said (p. 457): "A material question in this case is, whether the whole line to Denver, or only the line which the company was first authorized to construct (which terminated at the one hundredth meridian), is liable to the lien for the government subsidy, and the payment of five per cent. of net earnings." Answering the question, it was observed (p. 458): "From a careful examination of the statutes relating to this subject, we are of opinion that, whilst, as to its entire line, the company, in the words of the ninth section of the act of 1864, is 'entitled to all the benefits and subject to all the conditions and restrictions of the act,' and is bound to furnish transportation and telegraphic accommodations to the government on the usual terms; yet that the subsidy bonds granted to the company, being granted only in respect of the original road, terminating at the one hundredth meridian, are a lien on that portion only; and that the five per cent. of the net earnings is only demandable on the net earnings of said portion." See also *United States* v. *Union Pacific Railway*, 148 U. S. 562; *Kansas Pacific Ry. Co.* v. *Dunmeyer*, 113 U. S. 629.

It may be said that *Union Pacific Railroad Co.* v. *Harris*, 215 U. S. 386, puts a different construction upon the acts of 1862 and 1864 from that received in the cases cited, and, it must be admitted, there is language in the opinion which may be so understood, but that it was not so intended is made clear by *Kindred* v. *Union Pacific Railroad Co.*, 225 U. S. 582, where it is again declared that under congressional authority the route of the road was changed so that its connection with the Union Pacific Railroad would be made at a point farther west than was originally intended.

These cases decided that the Kansas Pacific Railway Company had a right to build west of the one hundredth meridian. It is not necessary, therefore, to consider the special features of the acts upon which petitioners rest their contention that the Kansas Pacific had no such right. The basic one, however, we will mention, lest it be thought that we have overlooked it or have not properly estimated its force. It is that the acts of 1862 and 1864 should not be considered and construed as one act; that though their provisions had relation in some instances, in others they had independent effect. Section 9, it is contended, is of the latter character, and is given a specific application by the proviso which is in the following words: "And provided further, That any company authorized by *this act* [italics ours] to construct its road and telegraph line from the Missouri river to the initial point aforesaid, may construct its road and telegraph line so as to connect with the Union Pacific Railroad at any point westwardly of such initial point." It is contended that these words exclude the Kansas Pacific Railway Company because the only two railroads authorized by "this act" to be constructed were the Sioux City Railroad (section 17) and the Burlington & Missouri River Railroad (section 18). But that the words "this act" should have such limited application was necessarily involved in the other cases and was adversely decided.

We have seen that the act of July 3, 1866, extended the time of the Union Pacific Railroad Company, Eastern Division (now the Kansas Pacific), to file its map of general route and provided for a reservation of land all along the route; but it also provided that the company should be entitled only to the same amount of bonds as it would have been entitled to if it had connected its line "with the Union Pacific Railroad on the 100th degree of longitude *as now required by law*." (Italics ours.) It is insisted by petitioners that this provision is a legislative construction

of the act of 1864 and "conclusive upon the point that it was defendant's [Kansas Pacific Railway, then Union Pacific Railroad, Eastern Division], duty at the date of said act to unite with the Union Pacific Railroad at the 100th meridian, and has the same effect as a special enactment of that date to that effect." The Court of Appeals rejected this contention, and construed the provision not as requiring the connection of the roads to be at the given meridian but as declaring that there should not be issued to the company bonds for a greater amount than if there had been a union with the Union Pacific at that point. And this necessarily must have been determined to be the true construction in the cited cases. We have said, perhaps with unnecessary repetition, that all the acts were under consideration in those cases and their true relation and meaning decided.

There are specific contentions addressed to the grant of the right of way. Some of them involve the element that the acts of Congress granted no right to the Kansas Pacific Railway Company to build west of the one hundredth meridian. That we have disposed of. Some of them are based on the following propositions: (1) that a grant of the right of way cannot be implied; it must actually exist in express words; (2) it cannot be implied from the use of the word " 'benefits,' " as there are many other benefits in the same act to which that word more aptly applies; (3) it is shown by the act that it never was intended to apply to the right of way. The last two contentions may be immediately rejected. The act manifestly applies to a right of way, and there is no distinction made between "benefits," for the language is "shall be entitled to all the benefits," save that of receiving bonds. A right of way is a substantial and obvious benefit. *Railroad Co.* v. *Baldwin*, 103 U. S. 426, 430.

There are two other contentions which deserve more extended comment. They are, (a) "that the act of 1864,

being simply an option offered to certain roads to build
westwardly," etc., it must be shown that they accepted
said option by filing maps thereunder, changing the old
route and designating the new one. (b) "That the grant
of a right of way is necessarily in the nature of a float,
although a grant *in præsenti*, like a military land warrant.
It becomes fixed only by filing a map of definite location
or by actual construction."

In reply to these contentions the respondent company
insists that neither a map of general location nor of general
route was necessary to the acquisition of a right of way;
that actual construction would secure it. The evidence
as to filing maps is somewhat uncertain. The Court of
Appeals in its opinion says: "There was some evidence
indicating that a map, showing the general route of the
railroad westwardly to the eastern Colorado line, was
filed with the Secretary of the Interior prior to Novem-
ber 30, 1866, the date not being more definitely stated; that
a map showing the general route from the eastern Colorado
line to Denver was accepted by that officer November 30,
1866, and that a map showing the definite location of
the railroad to Denver was filed in the land office at
Denver September 24, 1870; but none of these maps, nor
any better statement of what was shown thereon, was
offered in evidence."

It is, however, admitted by petitioners that a right of
way could be acquired by actual construction of the road,
and the railroad company finally rests its title on actual
construction of the road under the granting acts. It
admits that "the line of railroad was not definitely located
until the actual construction thereof." But it is contended
that upon its construction "the right of way attached
to the line as so constructed, but took effect as of the date
of the act of 1864." In other words, it is contended that
the right of way granted by the acts is given definite
location and precision by the construction of the road and

extends to the width of 200 feet from the center line of the track. This contention is supported by the decisions of this court. *Northern Pacific Railroad Co.* v. *Smith,* 171 U. S. 260. See also *Northern Pacific Ry. Co.* v. *Townsend,* 190 U. S. 267. The road was actually constructed through Denver and to a connection with the Union Pacific at Cheyenne and over the lands in controversy in 1870, and has been in operation ever since. But the right of way to its full width has not been occupied and used. This, however, makes no difference. See cases cited immediately above and *Northern Pac. Ry. Co.* v. *Hasse,* 197 U. S. 9; *Missouri, Kansas & Texas Ry. Co.* v. *Cook,* 163 U. S. 491, 497.

In this connection it is to be remembered that the grant of the right of way differed from the grant of alternate odd-numbered sections in that, while both were expressed in the words of a grant *in præsenti,* the former was without limitation or exception, while the latter was expressly made subject to the limitation or exception that it should not include any lands which, although public at the date of the grant, were sold, reserved or otherwise disposed of by the United States, or to which a preëmption or homestead claim had attached, at the date of definite location. Of such a difference between an unconditional grant of a right of way and a qualified grant of alternate odd-numbered sections this court said, in *Railroad Co.* v. *Baldwin,* 103 U. S. 426, 430: "The uncertainty as to the ultimate location of the line of the road is recognized throughout the act, and where any qualification is intended in the operation of the grant of lands, from this circumstance, it is designated. Had a similar qualification upon the absolute grant of the right of way been intended, it can hardly be doubted that it would have been expressed. The fact that none is expressed is conclusive that none exists. We see no reason, therefore, for not giving to the words of present grant with respect to the

right of way the same construction which we should be compelled to give, according to our repeated decisions, to the grant of lands had no limitation been expressed. We are of opinion, therefore, that all persons acquiring any portion of the public lands, after the passage of the act in question, took the same subject to the right of way conferred by it for the proposed road."

Petitioners rely upon adverse possession, established, as it is contended, under the statute of Colorado by the payment of taxes, and invoke in connection with such adverse possession the act of June 24, 1912, 37 Stat. 138, c. 181, entitled "An Act legalizing certain conveyances heretofore made by the Union Pacific Railroad Company."

Section 1 of the act legalizes all conveyances made by the railroad and railway companies to which grants of a right of way have been made, as we have stated, to the extent that the conveyances "would have been legal or valid if the land involved therein had been held by the corporation making such conveyance or agreement under absolute or fee simple title." It is further provided that where adverse possession is claimed of any part of such right of way under the laws of the State where the land is situated, such adverse possession shall have the same effect as though the right of way had been granted absolutely or in fee simple instead of being granted as a right of way. Of the effect of this act we are not called upon to express an opinion other than to say that it cannot avail petitioners, for the record shows that the respondent company also returned the right of way for taxation and paid the taxes thereon. In that respect the parties are on an equal footing.

*Decree affirmed.*


Mr. Justice Holmes and Mr. Justice Pitney took no part in the decision.