FLORIDA DRY CLEANING AND LAUNDRY BOARD, an instrumentality of the State v. EVERGLADES LAUNDRY, INC., *et al*; ECONOMY CASH AND CARRY LAUNDRY, INC., *et al.*, v. FLORIDA DRY CLEANING AND LAUNDRY BOARD, an instrumentality of the State; FLORIDA DRY CLEANING AND LAUNDRY BOARD, an instrumentality of the State, v ECONOMY CASH AND CARRY LAUNDRY, INC., *et al.*

188 So. 380.
Opinion Filed April 21, 1939.

' *E. F. P. Brigham, Sibley, Giblin & Schroeder* and *Whitfield & Whitfield, Harry Wells,* for Appellants;

*George Couper Gibbs,* Attorney General, and *Lawrence Truett,* Asst. Atty. Gen'l, *Hoffman & Robinson* and *Walsh, Beckham & Ellis,* for Appellees;

*George Holt* as *Amicus Curiae.*

TERRELL, C. J.—In August, 1938, Economy Cash and Carry Laundry, Inc., Economy Cash and Carry Cleaners, Inc., and French Benzol Cleaners, Inc., as Complainants filed their bill of complaint in the Circuit Court praying that the Florida Dry Cleaning and Laundry Board, as defendant, be enjoined from instituting any action against them for the purpose of coercing them (complainants) to observe all price fixing orders promulgated by said defendant and from enforcing the collection of any license taxes from complainants as required by Chapter 17894, Acts of 1939.

A temporary restraining order was granted as prayed for. The defendant, Florida Dry Cleaning and Laundry Board then came to this Court and sought a writ of prohibition against the Circuit Court from proceeding further in the cause. A rule *nisi* was issued which was on hearing discharged and the rule was dismissed. This appeal is from the temporary restraining order, the pertinent part of which is as follows:

"It Is CONSIDERED, ORDERED, ADJUDGED AND DECREED that the Defendants, and each of them, their officers, agents, servants, attorneys and employees, be and they are each here severally restrained and enjoined, until the further order of this Court, from enforcing or attempting to enforce against the Plaintiffs, or either of them, any price

fixing order promulgated or passed by the Defendants, or either or any of them, and they are each hereby further enjoined, until the further order of this Court, from instituting any action of any nature whatsoever against these Plaintiffs, or either of them for the purpose of compelling them to pay any license taxes authorized by Chapter 17894, of the Acts of Florida for the year 1937, and fixed and determined by the Defendants, or either of them."

On this appeal, several questions are urged but the main question with which we are confronted is the correctness *vel non* of the temporary restraining order and whether or not the plaintiffs below, appellees in this Court, adopted the proper remedy to secure the relief they seek.

They contend that Chapter 17894, Acts of 1937, about which they complain is unreasonable and unconstitutional as to them because they do a cash and carry business as distinguished from a delivery business and that the said Act was designed to eliminate them from the laundry business and to destroy their business. They also contend that the legislative finding that said Act was passed in response to public demand and necessity is without foundation or basis in fact.

The constitutional validity of Chapter 17894, Acts of 1937, was approved and upheld in Miami Laundry Co. v. Florida Dry Cleaning and Laundry Board, 134 Fla. 1, 183 So. 759. That holding was predicated entirely on the asserted invalidity of the Act as such. The procedure followed, the prices fixed, and other results incident to the administration of the Act were not before us and were not considered in the last cited case.

The constitutional validity of Chapter 17894 in so far as relates to the legislative power to enact it is accordingly a closed question, but the reasonableness of the prices fixed under it and other questions pertaining to its administration

as applied to complainant's business, are open and may be raised by them.

While we held in the last cited case that a legislative declaration to the effect that a business demands regulation under the police power is not conclusive but is subject to judicial review, we do not find sufficient showing in the record here to overthrow the finding of the legislature on this point. The legislature is the primary judge of this matter and unless its action is palpable wrong, it will not be disturbed.

Section Thirteen of Chapter 17894, provides that "any person, firm, or corporation deeming themselves aggrieved by any action of the Board taken under and of the provisions of this Act which has resulted in the granting of a final order by the said Board may within thirty days after receipt of a copy of the order of this Board, file a bill of complaint in chancery in the Circuit Court of the Circuit where the main headquarters of the Board is located seeking to reverse, vacate, or modify the said order complained of together with such other relief in equity as plaintiff might deem himself entitled to and such Court may thereafter proceed to hear and dispose of the same as in other proceedings in Chancery."

In respect to the procedure required to secure relief under the Act as quoted, we held in State, *ex rel.* Florida Dry Cleaning and Laundry Board v. Atkinson, *et al.,* decided November 19, 1938, that it was not essential that those aggrieved by orders of the Board first apply to it for relief before invoking the aid of the Circuit Court.

The law merely provides that the party aggrieved by orders of the Board may seek relief by Bill in Chancery. In this case, relief was sought by injunction. Some other remedy may have been as effective. The Act is *prima facie* valid. It has been held to be a proper exercise of legisla-

tive power and being so, it was error on the showing made for the Court to suspend its operation by temporary injunction pending the final disposition of the cause on the merits.

The gravamen of the complaint here is grounded on alleged unreasonable and discriminatory orders and findings of the Board imposing prices for laundry and dry cleaning favorable to those engaged in the delivery business but disastrous to those engaged in the cash and carry business, it being alleged that a proper differential is not made between those engaged in the two classes of business.

There is a distinct difference between delivery and the cash and carry aspect of the laundry and dry cleaning business. The manner and cost of administration in each is materially different and those who prefer to patronize the cash and carry business are entitled to the advantage of this difference. In fixing a schedule of prices, it is the duty of the board in the interest of the public to take into consideration these elements and establish a differential in charges between the two methods accordingly. If they fail in this, they may be required by the law as here quoted, to do so.

Chapter 17894 is within the clear contemplation of Section Thirty, Article Sixteen of the Constitution of Florida, designed for the correction of abuses and to prevent unjust and discriminatory charges on the part of common carriers and others performing services of a public nature. We deem this provision of the Constitution ample to cover the business involved here if guilty of the abuses charged against it. City of Tampa v. Tampa Waterworks Co., 45 Fla. 600, 34 So. 631, affirmed in 199 U. S. 241, 26 Sup. Ct. 23, 50 L. Ed. 170; State, *ex rel.* Ellis, v. Tampa Waterworks Co., 56 Fla. 858, 47 So. 358; City of Gainesville v. Gainesville, Gas and Electric Power Co., 65 Fla. 404, 62 So. 919.

The power of the Board to fix prices for laundry and dry cleaning was upheld in Miami Laundry Co. v. Florida Dry Cleaning and Laundry Board, *supra*. We do not recede from nor do we find reason to modify what we there said. Since the decision of that case, the following cases have been decided, all of which deal with and uphold the power of the legislature to fix prices through a fact finding board: Herrin, *et al.,* v. Arnold, 183 Okla. 392, 82 Pac. (2nd) 977; Board of Barber Examiners of Louisiana v. Parker, 190 La. 214, 182 So. 485; City of Atlanta v. National Bituminous Coal Commission, *et al.,* decided February 15, 1939, not yet reported; Townsend v. Yeomans, 310 U. S. 441, 57 Sup. Ct. 842, 81 L. Ed. 1210; State v. Greeson, decided February 4, 1939, by the Supreme Court of Tennessee.

These cases were all decided after West Coast Hotel Company v. Parish, 300 U. S. 379, 57 Sup. Ct. 578, 8 L. Ed. 703, 108 A. L. R. 1330, the decision of which reversed the current of decided cases in this country on the question of price fixing and the power of the legislature in the premises. The tendency now is to extend the State's power to regulate and fix prices to any business when reasonably necessary to the public good.

"Affected with a public interest" has heretofore been the criterion to determine whether or not a business was subject to regulation under the police power but that qualification has been stripped of its mystery. "Affected with a public interest" is mere redundancy and in no sense qualifies the power of the legislature to regulate except to say that regulation begins when the legislature deems that the public good requires that it be done and it is not material whether the business be public or private.

Any kind of regulation whether price fixing or otherwise is unconstitutional only when found to be "arbitrary discriminatory or demonstrably irrelevent to the policy the

legislature is free to adopt." In other words, if guided by the rule of reason, the regulation will be upheld by the Courts. The fact that it has not been done before or was accomplished in some other manner is not material.

Any species of police regulation will work a degree of injustice on some. It will be a boon to the indolent and a burden to the diligent; at the same time, it would be a sad commentary on our system of jurisprudence to pronounce it helpless before a category in which the indolent were crying for bread and the diligent were luxuriating in affluence. Free institutions cannot long endure in the face of such inequalities when reasonable means can be devised to level them. The desired mean between them may never be reached. In the nature of things, it cannot, but the law by regulation can provide the facilities through which it may be continually approached.

But there is a limit and a proper objective to regulation. The public, the owner of the thing regulated, and the laborer are all vitally concerned. Any regulation which leaves out of consideration any of these factors will be stricken down. It will not be permitted to overburden the public, to discriminate against the owner, to oppress the laborer, or to pamper and cajole any of them. It must give all an open chance and a free range to win the reward by labor. It will not load one on the back of the other to be carried.

Survival of the fittest may be the law of the jungle but it is not the law of Constitutional Democracies where Christian rather than pagan ethics are dominant. Constitutional interpretation is actuated by the rule of reason and to hold that the legislature is powerless to correct social and economic abuses because of constitutional barriers is placing an interpretation on the Constitution that is devoid of

basis for support and converts that instrument into a hurdle and an obstruction rather than a shield of defence.

The order below is accordingly reversed as to the temporary restraining order but with directions to permit amendment of the pleadings if necessary and to ascertain whether or not the orders and prices fixed by the Board do unfairly discriminate against complainants and if so found, decree accordingly, said decree to determine the classification and the amount of the licenses that complainants should be required to pay.

It is so ordered.

WHITFIELD, BUFORD, CHAPMAN and THOMAS, J. J., concur.

BROWN, J., dissents.