## PUBLIX CLEANERS, Inc., v. FLORIDA DRY CLEANING AND LAUNDRY BOARD.

District Court, S. D. Florida, Jacksonville Division.
March 12, 1940.

Bedell & Bedell and Milam, McIlvaine & Milam, all of Jacksonville, Fla., for plaintiff.

Rogers, Towers & Bailey, of Jacksonville, Fla., for defendant.

Edward McCarthy, Jr., of Jacksonville, Fla., and Hoffman & Robinson, of Miami, Fla., for intervenors.

STRUM, District Judge.

Plaintiff, a dry cleaner doing business in Florida on the "cash and carry" plan, asserts a controversy between itself and the defendant Board created by Chapter 17894, Laws of Florida, 1937. Plaintiff asserts that its right to operate its business free of the price regulations imposed pursuant to the statute is a "liberty" secured to it by the Fourteenth Amendment, Sec. 1, of which liberty it is deprived without due process of law by the activities of the Board pursuant to said statute.

The specific action of the Board to which plaintiff objects is the Board's order No. 36, issued in March, 1939, fixing, inter alia, minimum prices for cleaning and pressing garments in Duval County. The effect of this order is to require plaintiff to raise its prices above those which it wishes to charge for its services.

Plaintiff asserts that there is no authority for price fixing in the dry cleaning and laundry industry; that the minimum prices fixed are too high, and that the discount of 10% allowed for "cash and carry" business is too slight a differential between that type of business and the so-called "delivery" business; that the Board itself is composed of men engaged in the dry cleaning business who call for and deliver their work to customers, and that the Board unjustly favors those who cater to the "delivery" business, to the prejudice of, and in discrimination against, the plaintiff and others who carry on a "cash and carry" business.

Section 1 of the statute declares that it is enacted in the exercise of the state's police power, and contains a legislative "finding and determination" that the statute is necessary in the interest of the public health, and to prevent unfair trade practices and destructive price wars then prevalent in the industry. These findings the plaintiff undertakes to impeach as arbitrary, capricious and fictitious.

Legislative findings are not conclusive. The Legislature cannot by false or fictitious recitals draw to itself an unconstitutional power. Courts have the power to inquire into the existence of the factual basis for such findings. The constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that these facts never existed or have ceased to exist. United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234; Wolff Packing Co. v. Court of Industrial Relations, 267 U.S. 552, 45 S.Ct. 441, 69 L.Ed. 785.

The power and responsibility of devising remedies for public evils as they develop in a changing civilization, however, belong to the Legislature, not to the courts. Great respect should be accorded to legislative findings of fact. Every reasonable presumption favors their correctness. The burden of proof is upon one who assails the finding. Use of the due process clause as a means of securing a court veto of a legislative remedy for evils deliberately found by the Legislature to exist, should be confined to plain cases of arbitrariness, or capriciousness. Clark v. Gray, 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001.

It has been so frequently said by the courts as to have become a legal apothegm, that courts are not concerned with the mere wisdom or policy of regulatory statutes in the exercise of the police power. The courts concern themselves only with the power to enact the statute. Whether regulatory measures are desirable or adequate to curb the evil aimed at is a legislative power and responsibility, immune from judicial veto so long as constitutional guarantees are preserved. Pacific States Box & Basket Co. v. White, 296

U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853.

The evidence here introduced shows that the Florida Legislature in 1935 passed a statute, Acts Fla.1935, c. 16979, designed to regulate the laundry and dry cleaning industry through the agency of a supervisory board with power to fix minimum prices after due investigation of existing conditions in the industry in various parts of the state. In 1937 the Legislature reconsidered the subject and passed the present statute after holding public hearings. The act is comprehensive, covering sanitation and general regulations, as well as authorizing the Board to fix minimum prices in various zones, after public hearings, which was done in this instance by the challenged order No. 36, interested parties having been first heard by the Board.

It appears that perhaps $15,000,000 is invested in this industry in Florida and that approximately $10,000,000 of gross business is done annually. The industry employs approximately 30,000 people, with an annual pay roll of more than $5,000,000. It is unquestionably a substantial industry. That it directly affects the public health is clearly apparent. Because of the immense tourist traffic in Florida, and due to the substantial flow of foreign immigration through its ports, there are peculiar problems of sanitation in the handling of clothing in dry cleaning establishments. In the past, and immediately preceding the adoption of the first statute, there was much price cutting, followed by wage cutting, and at least some sporadic violence as a result of over-zealous competition. The Legislature found these practices led to disorganization in the industry, danger to the public health, and to inefficient processing of clothing, as well as to the bankruptcy of some of those engaged in the industry. The evidence produced by plaintiff in opposition to these legislative findings is wholly insufficient to impeach those findings, deliberately made after due investigation.

Aside, however, from these formal legislative findings, it appears that the statute is a valid and reasonable exercise of the state's police power in the interest of public health, as well as to curb competitive practices which are inimical to public welfare.

No one questions legislative authority, in the exercise of the police power, to fix prices for public utilities which render indispensible services, and enjoy in their business a monopoly or public grants or franchises, and which must serve all alike upon demand. The dry cleaning business is not a "public utility" in that sense. But the police power to fix prices is not confined to industries which are public utilities in the conventional sense. Price fixing in the public interest, when it bears a reasonable and logical relation to the public health or welfare, has been repeatedly sanctioned by the Supreme Court in other forms of industry.

In Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469, and in West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L. Ed. 703, 108 A.L.R. 1330, the following principles are enunciated: Price control is unconstitutional only if arbitrary, discriminatory, or demonstratively irrelevant to the policy that the Legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty.

There is no closed class or category of businesses affected with a public interest. There is nothing peculiarly sacrosanct about the price one may charge for what he makes or sells. The function of the courts under the Fifth and Fourteenth Amendments is to determine in each case whether in the circumstances the regulation is a reasonable exercise of governmental authority, or is arbitrary or discriminatory. The phrase "affected with a public interest" as used in decisions upholding public regulation of businesses means only that the industry, for adequate reason, is subject to legislative control for the public good.

The private character of a business does not necessarily exempt it from the regulation of prices by the state. So far as the requirement of due process is concerned, a state is free to adopt and enforce whatever economic policy may be reasonably deemed to promote public welfare, whether by promoting free competition by laws aimed at monopolies, or by curbing harmful competition by fixing minimum prices. The guarantee of due process demands only that the law shall not be unreasonable, arbitrary, or capri-

cious, and that the means selected shall have a reasonable and substantial relation to the object sought to be obtained.

As long ago as 1911, in Chicago, B. & Q. R. Co. v. McGuire, 219 U.S. 549, 31 S.Ct. 259, 262, 55 L.Ed. 328, it was said: "Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community." This thought was amplified in West Coast Hotel Company v. Parrish, supra, where it was said [300 U.S. 379, 57 S.Ct. 581, 81 L.Ed. 703, 108 A.L.R. 1330]: "The Constitution does not speak of freedom of contract. It speaks of liberty and prohibits the deprivation of liberty without due process of law. In prohibiting that deprivation, the Constitution does not recognize an absolute and uncontrollable liberty. * * * But the liberty safeguarded is liberty in a social organization which requires the protection of law against the evils which menace the health, safety, morals, and welfare of the people. Liberty under the Constitution is thus necessarily subject to the restraints of due process, and regulation which is reasonable in relation to its subject and is adopted in the interests of the community is due process." See Munn v. Illinois, 94 U.S. 1113, 24 L.Ed. 77.

The laundry and dry cleaning business is not a purely private one in which the public has no concern. On the contrary, the operation of a modern "dry cleaning" plant has a direct relation to public health. It is closely akin to a laundry. Unlike a tailor, who deals primarily with new clothing, the dry cleaner collects garments indiscriminately from all classes and varieties of customers and places, soiled by every variety of use. Some may have been exposed to, or infected with, serious contagion. Others may simply need cleaning. These garments are commingled together, sometimes as many as 1,200 at a time, in a horizontally revolving cylinder, which also contains a mineral oil cleaning solvent, where they are oscillated back and forth until thoroughly saturated with the fluid, and in a sense "washed" by it, after which they are steamed to further insure sterilization and to aid in pressing them.

The dangers to public health flowing from deficient or unskillful methods of cleaning such garments, in an effort to perform this service at an unjustifiably low price is obvious. It was in an effort to avoid the temptation to indulge in these practices, inimical to public health and welfare, that the Legislature acted to fix minimum prices.

Laundries have been regulated in the interest of sanitation for more than fifty years. See Barbier v. Connolly, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923; Soon Hing v. Crowley, 113 U.S. 703, 5 S.Ct. 730, 28 L.Ed. 1145. It was only the arbitrary enforcement of such regulations that was condemned in Yick Wo v. Hopkins, 118 U. S. 356, 6 S.Ct. 1064, 30 L.Ed. 220.

Price fixing affecting many enterprises, private in the sense that they enjoy no monopoly or public franchise, has been held within legislative competence and no denial of due process in many cases. The leading recent case is Nebbia v. New York, supra, sustaining the fixing of minimum and maximum prices for milk as to both producer and retailer. See, also, Hegeman Farms Corp. v. Baldwin, 293 U.S. 163, 55 S. Ct. 7, 79 L.Ed. 259; Miami Home Milk Producers Ass'n v. Milk Control Board, 124 Fla. 797, 169 So. 541, sustaining a similar statute in Florida. In Townsend v. Yeomans, 301 U.S. 441, 57 S.Ct. 842, 81 L.Ed. 1210, a Georgia statute prescribing maximum charges for handling and selling leaf tobacco, was sustained as consistent with due process.

The statute here under consideration was sustained, as against the same objection here raised, in Miami Laundry Company v. Florida Dry Cleaning & Laundry Board, 134 Fla. 1, 183 So. 759, 119 A.L.R. 956; Florida Dry Cleaning & Laundry Board v. Everglades Laundry, 137 Fla. 290, 188 So. 380, and again approved by the Florida Supreme Court in Robinson v. Florida Dry Cleaning & Laundry Board, 194 So. 269, decided February 23, 1940 See, also, United States v. Rock Royal Co-Op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446, sustaining as against like objections under the Fifth Amendment, minimum price regulations for milk under the Federal Agricultural Marketing Agreement Act, 7 U.S.C.A. § 601 et seq.; Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77, sustaining an Illinois statute fixing maximum prices for storing grain; German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 S.Ct. 612, 58 L.Ed. 1011, L.R.A. 1915C, 1189, sustaining a Kansas statute regulating fire insurance rates; O'Gorman v. Hartford Fire Insurance Co., 282 U.S. 251, 51 S.Ct. 130, 75 L.Ed. 324, 72 A.L.R. 1163, sustaining a New Jersey statute fixing

commissions for fire insurance agents. Compare the West Coast Hotel Company case, supra, sustaining an Oregon statute fixing minimum wages for women, and 'the many "minimum wage" cases collated in Kent Stores v. Wilentz, D.C., 14 F.Supp. 1, text page 4; also Pacific Box & Basket Co. v. White, supra, sustaining an Oregon statute prescribing the size and shape of containers for marketing berries. The court has read, with deference, the able opinions in Kent Stores v. Wilentz, D.C., 14 F.Supp. 1, and Becker v. State, 7 W. W. Harr. 454, 185 A. 92, both decided subsequent to the Nebbia case, but prior to the West Coast Hotel Company case. In the light of the more recent decisions, the court feels that these cases are inharmonious with the now established rule.

 It is now well settled that where legislative action is within the scope of the police power, fairly debatable questions as to its reasonableness, wisdom and propriety,—that is, the efficacy of the statute to achieve the desired ends—is for legislative, not judicial, determination. Neither are the courts concerned with the hardships or difficulties which may attend enforcement of the statute. Dearborn v. Seagram, 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476; Pacific States Box & Basket Co. v. White, 296 U.S. 176, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; Standard Oil Co. v. Marysville, 278 U.S. 596, 49 S.Ct. 177, 73 L.Ed. 527; Id., 279 U.S. 582, 49 S.Ct. 430, 73 L.Ed. 856; Gant v. Oklahoma City, 289 U.S. 98, 53 S.Ct. 530, 77 L.Ed. 1058. "If the legislative policy be to curb unrestrained and harmful competition by measures which are not arbitrary or discriminatory it does not lie with the courts to determine that the rule is unwise. * * * The Legislature is primarily the judge of the necessity of such an enactment." Nebbia v. New York, supra [291 U.S. 502, 54 S.Ct. 516, 78 L.Ed. 940, 89 A.L.R. 1469]. "If the orders made thereunder are not arbitrary fiats, the courts will stand aloof." Hegeman Farms v. Baldwin, supra [293 U.S. 163, 55 S.Ct. 10, 79 L.Ed. 259]. Upon the facts now before the court, and tested by the latest authoritative enunciations of the principles of due process, the court finds the statute to be within the police power of the state, as against the objections here urged.

 While the Board has upon it no one who, like the plaintiff, is engaged in the "cash and carry" business, the evidence does not convincingly show that the members of the Board have enforced the act capriciously or with an unequal hand to petitioner's disadvantage, as was the case in Yick Wo v. Hopkins, supra. There is evidence that the discount fixed for "cash and carry" business is reasonable. At most the question is a debatable one, and hence for the determination by the Legislature or its agency, the Board, upon whom rests the responsibility for the wisdom of the order.

Judgment will be entered declaring Chapter 17894, Laws of Florida, 1937, valid and enforceable as against plaintiff, involving no denial of due process in the circumstances alleged in the complaint.