No. 14,701.

Smith Brothers Cleaners and Dyers, Inc. *v.* People ex rel. Rogers.
(119 P. [2d] 623)

Decided September 8, 1941. Rehearing denied December 1, 1941.

Mr. Louis A. Hellerstein, for plaintiff in error.

Mr. Byron G. Rogers, Attorney General, Mr. E. L. Fundingsland and Mr. Albert L. Vogl, special counsel, for the people.

Mr. Morris Rifkin, Mr. Albert Orlinsky, amici curiae.

*En Banc.*

Mr. Justice Otto Bock delivered the opinion of the court.

This action was brought by the people on the relation of the attorney general to enforce certain provisions of

chapter 113, Session Laws of 1937 (chapter 36A, supplement to volume 2, '35 C.S.A.) against plaintiff in error, engaged in the cleaning and dyeing trade. The first cause of action in the complaint charges plaintiff in error, to which we hereinafter refer as defendant, with selling its services at considerably less than the established minimum prices; the second cause of action alleges that defendant violated the provisions of the act in paying its employees less than the minimum wages required thereby; and in the third cause of action it is stated that defendant violated the provisions of the act by requiring its employees to work in excess of the maximum hours of labor fixed thereby.

In its answer defendant raised the sole issue that chapter 113, supra, is null and void and unconstitutional, in that it violates sections 3 and 25 of article II of the state Constitution, and section 1 of the Fourteenth Amendment to the federal Constitution.

At the trial the attorney general and defendant each moved for judgment on the pleadings, and after arguments of counsel the court sustained the motion of the attorney general and entered an order making permanent the temporary injunction restraining defendant from violating the act as charged in the complaint. To review this judgment and order defendant sued out a writ of error and is here seeking reversal.

■ The primary contention of counsel for defendant is that the cleaning and dyeing industry is a private industry not affected with a public interest, and not subject to legislation or restriction as to prices which an industrial cleaner and dyer may charge for services. It will be noted that the only legislative objective challenged by defendant is the price-fixing provision, found in section 7 of the act and set forth in the first cause of action. It does not attack the minimum-wage and minimum-hour provisions, but urges that these should fail if they are so interwoven in the substance of the act itself as to nullify its effect. Defendant also asserts

that in the instant case there is involved the right of an individual engaged in a private business of personal service, not affected with a public interest, to fix his own prices. This right, he maintains, is protected by the due-process-of-law clauses of the state and federal Constitutions.

The first important case decided within the last decade by the United States Supreme Court, in which it sustained price-fixing legislation by a state, of a business not affected with a public interest, is *Nebbia v. New York,* 291 U.S. 502, 54 Sup. Ct. 505, 78 L. Ed. 940. In that case the court discusses the meaning of the phrase "affected with a public interest," and distinguishes between the regulation of a business affected with a public interest and the validity of regulation of a private business in the public interest. After denying that direct fixation of prices is a type of regulation absolutely forbidden by the due-process-of-law clause, the court said:

"The due process clause makes no mention of sales or of prices any more than it speaks of business or contracts or buildings or other incidents of property. The thought seems nevertheless to have persisted that there is something peculiarly sacrosanct about the price one may charge for what he makes or sells, and that, however able to regulate other elements of manufacture or trade, with incidental effect upon price, the state is incapable of directly controlling the price itself. This view was negatived many years ago. *Munn v. Illinois,* 94 U.S. 113.

\* \* \*

"The phrase 'affected with a public interest' can, in the nature of things, mean no more than that an industry, for adequate reason, is subject to control for the public good. In several of the decisions of this court wherein the expressions 'affected with a public interest,' and 'clothed with a public use,' have been brought forward as the criteria of the validity of price control, it has been admitted that they are not susceptible of definition and form an unsatisfactory test of the constitu-

tionality of legislation directed at business practices or prices. These decisions must rest, finally, upon the basis that the requirements of due process were not met because the laws were found arbitrary in their operation and effect. But there can be no doubt that upon proper occasion and by appropriate measures the state may regulate a business in any of its aspects, including the prices to be charged for the products or commodities it sells.

\* \* \*

"The Constitution does not secure to anyone liberty to conduct his business in such fashion as to inflict injury upon the public at large, or upon any substantial group of the people. Price control, like any other form of regulation, is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt, and hence an unnecessary and unwarranted interference with individual liberty."

This definite trend away from a narrow construction of the due-process-of-law clause was further emphasized in *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 Sup. Ct. 578, 81 L. Ed. 703, in which the Supreme Court of the United States expressly overruled *Adkins v. Children's Hospital,* 261 U.S. 525, which held invalid a minimum wage act. If there are any further doubts concerning the question as to whether the legislative enactments before us are valid and do not violate due process of law, they have been fully dispelled by the decision in the recent case of *Olsen v. State of Nebraska, ex rel,* 313 U.S. 236, 61 Sup. Ct. 862, 85 L. Ed. 1305. This latter case involved the fixing of maximum compensation which a private employment agency might collect from an applicant for employment. The Supreme Court of the United States, in an unanimous opinion, reversed the Supreme Court of Nebraska, which held the act violative of the due-process-of-law principle. In a previous opinion (*Ribnik v. McBride,* 227 U.S. 350, 48 Sup. Ct. 545, 72 L. Ed. 913) the same court had declared a similar

law unconstitutional, as in violation of the due-process-of-law clause. This and other cases (*Tyson & Brother v. Banton*, 273 U.S. 418, 47 Sup. Ct. 426, 71 L. Ed. 718; *Williams v. Standard Oil Co.*, 278 U.S. 235, 49 Sup. Ct. 115, 73 L. Ed. 287, upon which counsel for defendant primarily rely) are expressly overruled by the Olsen case decision, in which the court points out what it denominates as "a basic departure from the philosophy and approach of the majority in the Ribnik case." In discussing the phrase "affected with a public interest," as a test of constitutionality, Mr. Justice Douglas in the Olsen case, referring to the *Nebbia v. New York* decision, says: "That test, labeled by Mr. Justice Holmes in his dissent in the Tyson case (273 U.S. at p. 446) as 'little more than a fiction,' was discarded in *Nebbia v. New York, supra,* pp. 531-539. It was there stated that such criteria 'are not susceptible of definition and form an unsatisfactory test of the constitutionality of legislation directed at business practices or prices,' and that the phrase 'affected with a public interest' can mean 'no more than that an industry, for adequate reason, is subject to control for the public good.'"

An adequate reason that the fixing of minimum prices for services in the cleaning and dyeing industry, for our purposes, is for the public good, is contained in the legislative declaration of policy in section 1 of the act. Concerning the wisdom, need or appropriateness of the legislation here involved we quote from the last paragraph in the Olsen case, as follows: "Differences of opinion on that score suggest a choice which 'should be left where . . . it was left by the Constitution—to the States and to Congress.' *Ribnik v. McBride, supra,* at p. 375, dissenting opinion. There is no necessity for the state to demonstrate before us that evils persist despite the competition which attends the bargaining in this field. In final analysis, the only constitutional prohibitions or restraints which respondents have suggested for the invalidation of this legislation are those notions of

public policy embedded in earlier decisions of this Court but which, as Mr. Justice Holmes long admonished, should not be read into the Constitution. *Tyson & Brother v. Banton, supra,* at p. 446; *Adkins v. Children's Hospital, supra,* at p. 570. Since they do not find expression in the Constitution, we cannot give them continuing vitality as standards by which the constitutionality of the economic and social programs of the states is to be determined." See, also, *In re Interrogatories,* 97 Colo. 587, 52 P. (2d) 663; *Herrin v. Arnold,* 183 Okla. 392, 82 P. (2d) 977; *Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board,* 134 Fla. 1, 183 So. 759; *Florida Dry Cleaning & Laundry Board v. Everglades Laundry,* 137 Fla. 290, 188 So. 380.

We conclude that the enactment of chapter 113 was a proper exercise of the police power and find no basis in the due-process-of-law clauses of the state and federal Constitutions for condemning the price-fixing provisions of section 7 of the act.

■■ Up to this point we have dealt solely with the question of due process of law as applied to substantive law contained in the act under consideration. We now turn to a consideration of whether the procedural requirements set out therein satisfy due process of law. No such questions were raised in *People v. Barksdale,* 104 Colo. 1, 87 P. (2d) 755, in which the constitutionality of chapter 113, supra, also was involved.

By leave of court, counsel for Gigantic Cleaners & Dyers of Denver were permitted to file a brief as amici curiae in the present case. As their first contention in urging the unconstitutionality of the act they assert that it provides for no hearing, allows no appeal and affords no right to present evidence. Section 7 provides that "The State Administrative Board" constitutes "the state administrative agency." Its powers are confined to the enforcement of the provisions contained in said section. The procedural question on which it is here sought to have this section declared invalid is found in paragraph

3, of the section, subdivision (e) (1), 1937 Session Laws, p. 425, and is as follows: "(e) (1) To make investigations and surveys in this State relative to determining the fair and reasonable average cost for performing the various services regularly performed by cleaning and dyeing establishments; to submit all findings together with a schedule of minimum retail and wholesale prices based upon such fair and reasonable average costs to the Industrial Commission for approval, and, when approved, said minimum retail and wholesale prices shall be binding on every member of the trade within this State, in that no member of the trade shall sell or offer to sell any of the services included in such minimum price schedule at a price which is lower than the fair and reasonable average cost as established and approved in the minimum price schedule." Does the procedure authorized by this paragraph adequately safeguard the fundamental rights embraced in the conception of "due process"? We think not. There are no provisions requiring a notice or hearing and the right to present evidence; nor is there provided any opportunity to examine or cross-examine witnesses. To satisfy due process of law, only findings based upon competent evidence at an authorized hearing are valid. This also applies to the approval of the findings required by the Industrial Commission under said subsection. No such protection is found in the provisions of the law here under consideration, and in that respect it is invalid on its face. The right to be heard is a fundamental concept necessary under administrative procedure in a determination of what is reasonable, fair and just, and the legislative failure to provide such a right is fatal.

In the early case of *Brown v. Denver,* 7 Colo. 305, 3 Pac. 455, we said:

"The doctrine of the authorities is, that whenever it is sought to deprive a person of his property, or to create a charge against it, preliminary to, or which may be made the basis of taking it, the owner must have

notice of the proceeding, and be afforded an opportunity to be heard as to the correctness of the assessment or charge. It matters not what the character of the proceeding may be, by virtue of which his property is to be taken, whether administrative, judicial, summary or otherwise; at some stage of it, and before the property is taken or the charge becomes absolute against either the owner or his property, an opportunity for the correction of wrongs and errors which may have been committed must be given. Otherwise the constitutional guaranties above cited are infringed.

"Learned dissertations upon the meaning of the phrase, 'due process of law,' have been written by judges and law writers, but as applicable to summary proceedings of the character under consideration, its meaning is comprehended in the foregoing paragraph. If the law authorizing the proceedings provides for notice to the owner of the property to be affected, and gives him an opportunity to appear at a specified time and place, before a board or tribunal competent to administer proper relief, in order that he may be heard concerning the correctness of the charge before it is made conclusive, the constitutional requirements are satisfied."

In the case of *Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board, supra,* in which the Supreme Court of Florida held an act similar to ours constitutional, provisions for notice and a hearing before the board to satisfy due process are contained in the act. A statement of the principles here involved will be found in the recent case of *Morgan v. United States,* 304 U.S. 1 (58 Sup. Ct. 773, 82 L. Ed. 1129), where the court said: "The first question goes to the very foundation of the action of administrative agencies entrusted by the Congress with broad control over activities which in their detail cannot be dealt with directly by the legislature. The vast expansion of this field of administrative regulation in response to the pressure of social

needs is made possible under our system by adherence to the basic principles that the legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be´ protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing,'—essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an 'inexorable safeguard.' " (Citing several cases.)

The conclusion must follow that section 7, chapter 113, supra, by its failure to provide for notice and hearing, does not satisfy the procedural requirements of due process of law and we therefore declare it to be unconstitutional. The mere failure to provide for an appeal to any court from a final order of the board does not deny to a party aggrieved by such an order the right of access to the courts for the purpose of determining any matter which would be the appropriate subject of judicial inquiry. *Louisville, etc., R. R. Co. v. Garrett,* 231 U.S. 298, 34 Sup. Ct. 48, 58 L. Ed. 229.

Counsel for defendant contends that if the price-fixing provisions are void, the entire act falls. That a legislative act, severable in its parts, may be unconstitutional in part and valid as to the remainder, no longer is an open question. *Home Owners' Loan Corporation v. Public Water Works District No. 2,* 104 Colo. 466, 92 P. (2d) 745; *Gordon v. Wheatridge Water District,* 107 Colo. 128, 109 P. (2d) 899. If, standing alone, legal effect can be given to the unobjectionable part of the act, and the legislature intended the provision to stand, it does not fall. *Dorchy v. Kansas,* 264 U.S. 286, 44 Sup. Ct. 323, 68 L. Ed. 686. In the Colorado law the legislative declaration of severability is contained in section 12, and reads as follows: "Section 12. Constitutionality. If any part, section, subsection, sen-

tence, clause or phrase of this Act is, for any reason. whatsoever, held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this Act. The General Assembly hereby declares that it would have passed this Act, or each part, section, subsection, sentence, clause or phrase, irrespective of the fact that any one or more other parts, subsections, sentences, clauses or phrases be declared unconstitutional, and to this end the provisions of this Act are declared to be severable and independent of each other." This declaration should at least be considered as an aid in determining legislative intent. The invalidity involved relates solely to the provisions of section 7. Only in that section is the power of the State Administrative Board involved. All other sections of the act, which are independent of section 7 and have no relation thereto, can be given legal effect. We do not here attempt to determine other specific questions as to constitutionality of the act which subsequently may be raised; nor do we prejudge any administrative problem that may involve procedural difficulties. We do hold, however, that section 7 is separable from the rest of the act, and that primarily the remaining sections are not invalid.

The case is remanded with directions to modify the order granting the permanent injunction, by striking therefrom any restraining provisions authorized by section 7, of said chapter 113, and, as so modified, the judgment is affirmed.

MR. JUSTICE BURKE concurs in part and dissents in part.

MR. JUSTICE HILLIARD concurs in part and dissents in part.

MR. JUSTICE BAKKE not participating.

MR. JUSTICE BURKE.

I concur in the court's reversal on the question of procedure.

I dissent to the conclusions on the question of price fixing. I do not agree with some of the authorities cited in support thereof, but I think this decision goes even further and gives unlimited authority to the legislature to enter the whole field of price fixing. If so, all individual liberty in controlling purely private business has gone by the board and due process as applied thereto has been scrapped.

MR. JUSTICE HILLIARD concurs in the opinion of the court in so far as the legislative act involved is declared valid; as to the holding that portions thereof are unconstitutional, he dissents.

## On Petition for Rehearing.

MR. JUSTICE KNOUS, concurring originally, now dissents from that portion of the opinion holding section 7, chapter 113, S.L. 1937, unconstitutional.